USCA1 Opinion

 

 October 22, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 93-1037 THOMAS P. BOWLING, Plaintiff-Appellant, v. GEORGE A. VOSE, DIRECTOR OF THE DEPARTMENT OF CORRECTIONS, STATE OF RHODE ISLAND, ET AL., Defendants-Appellees. ____________________ ERRATA SHEET The opinion of this Court issued on September 10, 1993, is amended as follows: Add to the end of footnote 2 on page 2 of the opinion: It is apparently the state's view that Inspector Byrne's estimate that the fire started thirty to forty-five minutes before discovery depended on the assumption that the fire did not start until 11:46. We see no basis for this assumption and think that, at the very least, the testimony is reasonably open to the interpretation that the fire had been started thirty to forty-five minutes before it was actually discovered. Add as a footnote on page 6 of the opinion following the first sentence on that page after the word "testimony": The trial judge and the Rhode Island Supreme Court conducted the required weighing of factors elaborated in Taylor and concluded ______ that the exclusion of the alibi evidence was an appropriate sanction. As the application of Taylor is a legal question, we review this ______ ruling de novo and arrive at the opposite conclusion. Add as a footnote at the end of the first full paragraph on page 7, after the word, "worst": The trial court not only failed to make any explicit finding of willful misconduct, see ___ Bowling v. Vose, No. 91-0472, slip op. at 3 _______ ____ (D.R.I. Nov. 13, 1992), it seemingly concluded to the contrary. In its exclusionary ruling, the court stated that it was "not persuaded that [offering an alibi witness] was the defendant's original intention . . . ." Without such an intent to violate the discovery rules, the fact that defense counsel later felt that an alibi witness should be called would not be indicative of bad faith or misconduct. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1037 THOMAS P. BOWLING, Plaintiff-Appellant, v. GEORGE A. VOSE, DIRECTOR OF THE DEPARTMENT OF CORRECTIONS, STATE OF RHODE ISLAND, ET AL., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ Boudin, Circuit Judge. _____________ _____________________ Paula Lynch Hardiman for appellant. ____________________ Jane M. McSoley, Assistant Attorney General, Appellate _________________ Division, with whom Jeffrey B. Pine, Attorney General, was on ________________ brief for appellee State of Rhode Island. ____________________ September 10, 1993 ____________________ TORRUELLA, Circuit Judge. In this habeas corpus _____________ action, appellant was convicted of first-degree arson in Rhode Island. He claims that the trial judge excluded an alibi witness in violation of his Sixth Amendment rights, and we agree. In the prosecution's request for discovery information prior to trial, the prosecution specified that the suspect fire started between 11:00 p.m. and 12:00 a.m., on June 7, 1986, at his apartment building in Pawtucket, Rhode Island. In complying with the request appellant did not aver an alibi defense, although Rhode Island Rule of Criminal Procedure 16 requires a defendant to provide such notice within 21 days of receipt of the state's demand.1 Appellant claims that he was unaware of any alibi for that evening between 11:00 p.m. to 12:00 a.m. Appellant prepared his defense accordingly. At trial, the state presented the testimony of Donald Byrne, a fire investigator. On cross-examination, he stated that the fire actually started thirty to forty-five minutes before it was discovered.2 Appellant's counsel then calculated that, ____________________ 1 The rule provides that "upon demand by the attorney for the State and delivery by him or her to the defendant of a written statement describing with specificity the date and time when and the place where the offense charged is alleged to have occurred, the defendant, within twenty-one (21) days after receipt of such demand and particulars, shall give written notification whether he or she intends to rely in any way on the defense of alibi." R.I. Sup. Ct. R. Crim. P. 16. 2 Inspector Byrne believed that the fire was reported at 11:46 p.m., and testified as such. However, the Pawtucket Fire Department reported that it was informed about the fire at 11:34 p.m. The latter report would seem to be the most definitive evidence of the actual starting time. It is apparently the state's view that Inspector Byrne's estimate that -2- according to the inspector, the fire must have started between 10:49 and 11:04 p.m. This new time period obviously was somewhat removed from the 11:00 p.m. to 12:00 a.m. period that counsel had previously focused on in preparing the defense. The revised time window suggested a new defense. Counsel remembered an affidavit, supplied during discovery by the state, from appellant's common-law wife, Doris Palmieri.3 Ms. Palmieri stated that appellant had picked her and her sister up at a club in Providence sometime after ten o'clock. Because a witness placed appellant at the building at 10:34 p.m., and others saw him there before then, counsel inferred that he did not leave to pick up his wife until after approximately half past ten. Counsel then tracked down Ms. Palmieri's sister, Jenette Fagundes, and learned that after picking up the sisters at the club, appellant drove her home before returning to Pawtucket. Counsel determined that appellant could not leave Pawtucket after 10:34 p.m., drive to the club in Providence, take Ms. Fagundes to her home in Providence, and return to Pawtucket in time to start the fire by 11:04 p.m. Appellant therefore could not have burned down the building. ____________________ the fire started thirty to forty-five minutes before discovery depended on the assumption that the fire did not start until 11:46. We se no basis for this assumption and think that, at the very least, the testimony is reasonably open to the interpretation that the fire had been started thirty to forty- five minutes before it was actually discovered. 3 Ms. Palmieri passed away shortly after the fire, of causes unrelated to the fire. -3- After the state closed its evidence, and five days after the fire inspector testified, counsel petitioned the court to allow Ms. Fagundes to testify. He stated that he did not recognize the relevance of her story until the fire inspector testified about when the fire started. Furthermore, he did not learn Ms. Fagundes' name or address until two days later. The state responded that it would not oppose the motion if it could introduce Ms. Palmieri's statement, which contained incriminating facts, in full as rebuttal. In it, Ms. Palmieri revealed that upon arriving at the apartment building, appellant told her that she should sleep elsewhere. The trial judge took a recess to ponder the matter and ultimately decided to exclude Ms. Fagundes' testimony. The judge noted that appellant had the Palmieri statement well before the trial, and that it sufficiently raised the possibility of the alibi. Because Rule 16 imposed an affirmative duty on appellant to disclose reliance on an alibi, even if the name of the witness was unknown, the judge found that appellant had violated discovery. The judge excluded the alibi testimony as a sanction under Taylor v. Illinois, 484 U.S. 400 (1988). The judge ______ ________ determined that defendant "seized upon this tact having heard the state's entire case and the state rested," and cited the need to ensure the "orderly administration of justice." In contrast to the proffered alibi, the inculpatory evidence at trial was substantial. Two eyewitnesses saw appellant in the vicinity of the fire overcome by smoke; one saw -4- him running from the building. Another eyewitness saw appellant throwing lighted paper into a vent leading to the first floor of the building. Witnesses testified that appellant threatened the building's owners shortly before the fire. Another witness apparently testified that appellant had warned the witness to leave the building. Swayed by this evidence, the jury rendered a guilty verdict and appellant received a 25 year sentence. Appellant bases his argument on the Sixth Amendment, which states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." Of course, the "right to compel a witness' presence in the courtroom" would be meaningless "if it did not embrace the right to have the witness' testimony heard by the trier of fact." Taylor, 484 U.S. at 409. Exercise of the ______ right thus assists the adversary process in its truth-seeking function by ensuring that the trial court hears the full array of admissible facts pertinent to the case. The Court in Taylor ______ noted that "few rights are more fundamental than that of an accused to present witnesses in his own defense." Id. at 408. ___ It is not an absolute right, however. Given the demands of the adversary system, the Court in Taylor found that a ______ trial court may exclude a defense witness without trampling on the Sixth Amendment. The Court issued no hard test; rather, it listed various considerations that a judge could use as a guide. These include the "integrity of the adversary process, which depends both on the presentation of reliable evidence and the -5- rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." Id. at ___ 414-15. If these concerns outweigh the defendant's interest in presenting witnesses, the trial court can properly exclude the testimony4. Courts thus have upheld the exclusion of a witness when a party willfully violates the discovery rules to gain a tactical advantage in litigation. In Taylor, for instance, it was "plain ______ that the case fit[] into the category of willful misconduct in which the severest sanction is appropriate." Id. at 417. The ___ proposed testimony appeared to be fabricated -- "witnesses [were] being found that really weren't there." Id. In Michigan v. ___ ________ Lucas, 111 S. Ct. 1743, 1748 (1991), the Court explained its _____ earlier holding: "We did not hold in Taylor that preclusion is ______ permissible every time a discovery rule is violated. Rather, we acknowledged that alternative sanctions would be 'adequate and appropriate in most cases'" (quoting Taylor, 484 U.S. at 414). ______ The Court in Lucas justified the imposition of the severest _____ sanction of exclusion in Taylor by noting the willful character ______ of the discovery violation. Indeed, most circuit court cases affirming exclusion in ____________________ 4 The trial judge and the Rhode Island Supreme Court conducted the required weighing of factors elaborated in Taylor and ______ concluded that the exclusion of the alibi evidence was an appropriate sanction. As the application of Taylor is a legal ______ question, we review this ruling de novo and arrive at the opposite conclusion. -6- response to discovery violations involve willful conduct. See ___ United States v. Johnson, 970 F.2d 907, 911 (D.C. Cir. 1992); _____________ _______ United States v. Mitan, 966 F.2d 1165, 1175 (7th Cir. 1992); ______________ _____ Horton v. Zant, 941 F.2d 1449, 1467 (11th Cir. 1991); United ______ ____ ______ States v. Peters, 937 F.2d 1422, 1426 (9th Cir. 1991); Eckert v. ______ ______ ______ Tansy, 936 F.2d 444 (9th Cir. 1991); Escalera v. Coombe, 852 F.2d _____ ________ ______ 45, 48 (2d Cir. 1988); Chappee v. Vose, 843 F.2d 25 (1st Cir. _______ ____ 1988). The Ninth Circuit has even interpreted Taylor to mean ______ that exclusion is permissible only when the case involves misconduct. Peters, 937 F.2d at 1426. ______ In this case, there was no such misconduct. Appellant did not, and could not, learn that the fire was set between 10:49 to 11:04 p.m., until the fire inspector was cross-examined at trial. Appellant proceeded on the theory that 11:00 p.m. to 12:00 a.m. was the relevant time period simply because the government suggested that it was the relevant time period.5 While counsel could have learned about appellant's travels on the night in question with some ease from the Palmieri statement, we view counsel's ultimate failure as negligence at worst6. ____________________ 5 The reporter's notes appended to Rule 16 recognize the significance of the state-provided time of offense. "Unless defendant is given specific information about the time and place of the offense, his ability to predict whether or through whom he will raise the defense of alibi may be impaired." Sup. Ct. R. Crim. P. 16 reporter's notes to 1974 amendment. 6 The trial court not only failed to make any explicit finding of willful misconduct, see Bowling v. Vose, No. 91-0472, slip op. ___ _______ ____ at 3 (D.R.I. Nov. 13, 1992), it seemingly concluded to the contrary. In its exclusionary ruling, the court stated that it was "not persuaded that [offering an alibi witness] was the defendant's original intention . . . ." Without such an intent -7- In this circumstance, it is obvious that concerns related to the integrity of the trial process do not weigh in favor of exclusion. Indeed, exclusion of an exculpatory and potentially reliable alibi would distort the truth-seeking function of trial. The proposed testimony does not threaten to pollute the trial with unreliable evidence; it corroborates a written statement that the prosecution itself was content to use. The fact that no willful misconduct prevented timely disclosure of the alibi also allays fears of fabrication and untruthfulness. The prosecution could have received a continuance to investigate the alibi and cross-examine Ms. Fagundes about the night in question. Furthermore, the proposed testimony was not particularly scientific or technical in nature, which could have imposed a hardship on the government in preparing a cross- examination on short notice. Given the unintentional nature of the violation in this case, we see no threat to the trial process as a whole. Undoubtedly the interest in the fair and efficient administration of justice is burdened by the introduction of a new defense theory after the government has closed its evidence. Alternative remedies exist, however, which adequately and appropriately address fairness and efficiency. Rhode Island Rule 16 does not limit trial judges to exclusion as the only sanction for a violation of its discovery rules. It lists less severe ____________________ to violate the discovery rules, the fact that defense counsel later felt that an alibi witness should be called would not be indicative of bad faith or misconduct. -8- remedies such as requiring the offending party to reveal the discovery or inspection, granting a continuance, or entering "such other order as it deems appropriate." R.I. Sup. Ct. R. Crim. P. 16(i). Given the important nature of the proposed testimony to the defendant, and the nonwillful character of the offense, we find that concerns over fairness and efficiency are not sufficiently weighty to justify the denial of appellant's Sixth Amendment rights. Indeed, the trial court's concern over fairness and efficiency seems less credible when the prosecution itself was willing to have the evidence admitted. This is one of those cases in which a less severe sanction than exclusion of a witness was "adequate and appropriate." Taylor, 484 U.S. at 414. ______ Although we have found that error of constitutional magnitude infected this case, our analysis is not over. Before a writ of habeas corpus may issue, that error must have been sufficiently prejudicial to defendant's rights to warrant habeas relief. As the Supreme Court has framed the inquiry, the error must have "had substantial or injurious effect or influence in determining the jury's verdict." Brecht v. Ahmanson, 113 S. Ct. ______ ________ 1710, 1714 (1993) (citing Kotteakos v. United States, 328 U.S. _________ _____________ 750, 776 (1946)). As this standard is "grounded in the federal harmless-error rule (28 U.S.C. 2111), federal courts may turn to an existing body of case law in applying it." Id. at 1722. __ On the record we have before us, we cannot make a sufficiently appropriate determination on whether the Taylor ______ -9- violation in this case meets this standard. The district court is in a better position to evaluate this issue in the first instance, as the inquiry entails a determination of the exact nature and force of Ms. Fagundes' proposed testimony and an effort to place her testimony within the context of the evidence as a whole. In short, the weight of her testimony must be balanced against the weight of the inculpatory evidence in this case, which is substantial. We therefore remand the case to the district court for ______ a determination of this issue. The district court should hold such hearings as necessary. -10-