907 P.2d 550

**STATE of Arizona, Appellee,**

v.

**David J. KILLEAN, Appellant.**

**No. 1 CA–CR 94–0325.**

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 22, 1995.

Review Granted Nov. 21, 1995.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Jon G. Anderson, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Judge.

Appellant David J. Killean was convicted after a jury trial of one count of possession of marijuana for sale, a class 3 felony, and one count of transportation of marijuana for sale, a class 2 felony. He was sentenced to mitigated terms of 3.75 years imprisonment and 5.25 years imprisonment for the respective counts, and the sentences were ordered to run concurrently. He also was ordered to pay a fine in the amount of $36,000. Appellant timely appealed his convictions and sentences to this court. We reverse the convictions and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

On the evening of May 20, 1993, Detective Kathi Galbari of the Phoenix Police Department, Detective Gary Eggert of the Maricopa County Sheriff's Office, and Sergeant Shelli Woodward of the Arizona Army National Guard were on duty at Phoenix Sky Harbor International Airport. They were assigned to the Phoenix Police Department's Commercial Interdiction Unit ("CIU"), a unit which focuses on intercepting drugs and drug proceeds transported through Sky Harbor.

Between 9:30 p.m. and 10:00 p.m., Eggert observed Appellant step out of an Arizona Shuttle Service van arriving from Tucson.[1] Appellant was wearing a gray suit, carrying a duffle bag, and dragging a new, hard-sided suitcase. Eggert gave a signal to Woodward, who followed Appellant into Terminal Four. Woodward found it suspicious that Appellant was wearing a business suit, but was not carrying a briefcase or a garment bag. Upon entering Terminal Four, Woodward advised Galbari about what had been observed to that point.

Appellant waited for a period of time and then checked his suitcase at the America West Airlines ticket counter. Galbari observed Appellant paying the airline representative with cash. Galbari and Woodward then walked behind the ticket counter to the luggage handling area to examine the suitcase Appellant had checked. It had two name tags—both of which identified Appellant as the owner of the bag. Galbari squeezed the suitcase in an attempt to detect an odor in the air pushed out of the bag. She could not smell anything. She squeezed the suitcase again and felt a hard mass inside which, based upon her experience, she believed to be a bale of marijuana. Galbari

1. CIU frequently had apprehended marijuana smugglers using this shuttle as a means of transportation from Tucson to Sky Harbor.

then asked Woodward to squeeze the suitcase; she did and smelled an odor of hay. Galbari instructed Woodward to remain with the bag and returned to the airport concourse.

Galbari joined Eggert. After Appellant left the ticket counter, they approached him, identified themselves as police officers, and asked him if he would answer some questions. Appellant agreed. Galbari asked Appellant for his driver's license and airline ticket. When Appellant handed them to her, he was extremely nervous—his hands were shaking and his face was perspiring. Galbari then requested to search Appellant's duffle bag. He agreed and the ensuing search produced no contraband. Galbari then asked Appellant for permission to search his suitcase. Appellant refused. At that time, Galbari informed Appellant that she suspected that his suitcase contained illegal drugs and that he was under investigative detention until a narcotics detection dog could examine it.

Galbari immediately called her supervisor and was informed that a narcotics detection dog would be transported to the airport to sniff the suitcase. Appellant was advised of his *Miranda*[2] rights, and then transported to the security office in Terminal Three. At 10:55 p.m., Crackers, a narcotics detection dog, sniffed the suitcase and alerted on it. Appellant was arrested and the officers applied for and obtained a search warrant. Thereafter, when the suitcase was opened and searched, officers found three bales of compressed marijuana weighing a total of twenty-three pounds, each pound worth between $500 and $1,000 if sold in Maricopa County.

Appellant was indicted for one count of possession of marijuana for sale and one count of transportation of marijuana for sale. Prior to trial, he filed a motion to suppress. The trial court held evidentiary hearings, took the matter under advisement, and then denied the motion.

The case proceeded to trial. Immediately before jury selection on the morning of Wednesday, March 2, 1994, the court held an informal conference with the attorneys. The court asked the attorneys how long the trial would last and requested a list of witnesses. The prosecution filed its list. Defense counsel Allen Bickart, a certified specialist in criminal law who had been practicing law for thirty-eight years, did not have a witness list. Nevertheless, he proceeded to add to the prosecution's list, in handwriting, three witnesses—a Sharon Ginther employed by America West Airlines, a Karen Shumard employed by the Pueblo Inn in Tucson, and a Ginger (whose last name was unknown) employed in Tucson by Arizona Shuttle Service, Inc. The prosecutor informed the court that defense counsel had not noticed these witnesses previously. The court ordered defense counsel to provide the prosecutor with the names, addresses, and phone numbers of the witnesses by 5:00 p.m. that afternoon. Defense counsel provided this information to the prosecutor and informed her that the witnesses would be made available to be interviewed at 9:00 a.m. on Monday, March 7, 1994.

During his opening statement, defense counsel referred to an Ed Kenefick, who allegedly travelled to Tucson with Appellant under the name Ed Hessberger. Counsel claimed that the suitcase and the marijuana belonged to Kenefick, and that Appellant, unaware that there was marijuana inside of it, had agreed to return the suitcase to Kenefick's wife. Counsel told the jury that they would see documents supporting Appellant's story, including: (1) America West Airlines records demonstrating that Hessberger travelled from Newark to Phoenix with Appellant; (2) Arizona Shuttle Service records demonstrating that Appellant and Kenefick travelled together to Tucson; and (3) Pueblo Inn records demonstrating that Kenefick stayed in the room next to Appellant and made several phone calls while in Tucson.

After court adjourned for the day, the court held another conference with the attorneys. The prosecutor informed the court that she learned for the first time about Kenefick and the documentary evidence supporting Appellant's story during the opening statement of defense counsel. She then

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

moved to preclude the witnesses and Defendant's Exhibits 8, 9, and 10 For Identification ("documentary evidence"). The court denied the motion without prejudice, but indicated that it would reconsider the motion later in the trial after determining whether the prosecution was prejudiced. The court also ordered that all the documentary evidence be delivered to the prosecutor by 10:00 a.m. the next morning. Defense counsel complied with this order.

The prosecution began its case-in-chief on Thursday, March 3, 1994. After a three-day recess in the proceedings, trial resumed on Monday, March 7, 1994. On Tuesday, March 8, 1994, the prosecutor filed a motion to preclude the three witnesses and Appellant's documentary evidence. The court held a conference on the motion. Defense counsel conceded that the disclosure was untimely, but argued that it occurred because Appellant was living in New York and was not present to assist with preparation of his defense. He also asserted that the police reports gave the prosecution sufficient notice. The court rejected both arguments, finding no reason justifying the late disclosure and noting that the case was an old one which already had been continued for several months. The prosecutor then informed the court about the investigation conducted after Appellant's late disclosure.[3] She then argued that the prosecution was prejudiced because: (1) Ginther of America West Airlines was not a custodian of records and could not testify about whether Kenefick made the airline reservation for Appellant; (2) Appellant had not denied ownership of the suitcase previously; (3) Kenefick and Hessberger could not be located in New York and therefore could not be investigated; (4) Galbari was unable to obtain a subpoena to identify whose phone numbers were called from Kenefick's hotel room; and (5) it was impossible to do a complete investigation in a matter of days—two of which fell on a weekend. Because the court felt that the late

disclosure prohibited the prosecution from being able to adequately confront and rebut Appellant's evidence fairly, it granted the motion to preclude Appellant from calling three witnesses and from offering his documentary evidence. The court also ordered the prosecutor not to comment about defense counsel's failure to produce the witnesses and documentary evidence mentioned in his opening statement.

The trial proceeded and Appellant took the stand in his own defense. He asserted that he had no knowledge of the contents of the suitcase because it belonged to Kenefick, and because he merely was doing a favor by carrying it back to Kenefick's wife in New York.

Appellant was convicted of both charged offenses. After sentencing, he timely appealed to this court and now raises two arguments: (1) That the trial court committed clear and manifest error by denying his motion to suppress the contents of the suitcase; and (2) that the trial court abused its discretion by precluding him from calling three witnesses and from offering his documentary evidence.

## DISCUSSION

### A. Motion To Suppress.

Appellant contends that the trial court committed clear and manifest error by denying his motion to suppress the marijuana as the fruit of an illegal stop, search, and seizure. Specifically, he argues that the Fourth and Fourteenth Amendments to the United States Constitution were violated because: (1) Galbari and Woodward conducted an illegal search of his suitcase by squeezing it and sniffing the air that came out of it; (2) the officers did not have reasonable suspicion to detain Appellant and seize his suitcase; and

---

3. The prosecutor informed the court that Galbari had contacted the police department in Binghamton, New York, which conducted a computer check but was unable to provide her with any information about Appellant, Kenefick, or Hessberger. Galbari called the phone numbers of another Kenefick and another Hessberger; both

were dead ends. Because Galbari was in court as the investigator for this case, she did not have the opportunity to work with the Phoenix Police Department to investigate the phone numbers called from Kenefick's room at the Pueblo Inn in Tucson. She also was unable to obtain a subpoena to determine who those numbers serviced.

(3) the detention was not reasonable in duration.[4]

An appellate court will not disturb a trial court's ruling on a motion to suppress absent clear and manifest error. *State v. Stanley*, 167 Ariz. 519, 523, 809 P.2d 944, 948, *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991). When reviewing the trial court's ruling on a motion to suppress, an appellate court reviews the facts in a light most favorable to sustaining the trial court's ruling. *State v. Smith*, 136 Ariz. 273, 275, 665 P.2d 995, 997 (1983).

*1. The Handling Of Appellant's Suitcase.*

Appellant contends that Galbari and Woodward illegally searched his suitcase by squeezing the air out of it and smelling the air inside. We disagree.

In *State v. Houpt*, 169 Ariz. 550, 551, 821 P.2d 211, 212 (App.1991), Division Two of this court held that "reasonable suspicion ... is not necessary before [officers] may use a narcotics detection dog, or other techniques, to examine a suitcase while it is being held by airline personnel so long as that examination does not meaningfully interfere with [a] defendant's possessory interest." Because *Houpt* cited *United States v. Lovell*, 849 F.2d 910 (5th Cir.1988) as authority for its holding, some of the "other techniques" referred to in *Houpt* implicitly include those approved of in *Lovell*. In *Lovell*, an officer removed a suitcase from a conveyor belt after it had been surrendered to a third-party common carrier and squeezed it to force out the air. *Id.* at 916. Recognizing that "a human sniff is not a search[,]" *id.* at 914, the court held that the officer's actions did not constitute a search because the defendant's "reasonable expectation of privacy with respect to his luggage—that the contents would not be exposed to view—was not compromised...." *Id.* at 915. Likewise, it held that because the "momentary delay occasioned by the bags' removal from the conveyor belt was insufficient to constitute a meaningful interference"

with the defendant's possessory interest in his luggage, the officer's actions did not constitute a seizure. *Id.* at 916.

Here, Galbari and Woodward squeezed Appellant's suitcase and smelled the odor of the air inside of it after Appellant had checked it with America West Airlines. This did not compromise his reasonable expectation of privacy nor did it constitute a meaningful interference with his possessory interest. In fact, the officers here used the same procedures held to be constitutionally permissible in *Lovell*.

Appellant cites *State v. Randall*, 116 Ariz. 371, 373, 569 P.2d 313, 315 (App.1977) to support his argument that an officer conducts an unreasonable search and seizure by squeezing a suitcase. *Randall* preceded *Lovell* and *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (exposure of traveler's luggage located in public to a "sniff" by a narcotic detection dog does not constitute search for purposes of Fourth Amendment). Although *Houpt* did not reject the rationale of *Randall* expressly, we believe that it did so implicitly by following *Lovell*. 169 Ariz. at 551, 821 P.2d at 212.

Accordingly, we conclude that the handling of Appellant's suitcase did not violate the Fourth and Fourteenth Amendments.

*2. Reasonable Suspicion For The Detention And Seizure.*

Appellant contends that he was detained and his suitcase was seized without reasonable suspicion, in violation of the Fourth and Fourteenth Amendments. We disagree.

The detention of a person's luggage to secure the issuance of a search warrant, after such person has refused to consent to a search of the luggage, constitutes a "seizure" for Fourth Amendment purposes. *Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45. "[W]hen the police seize luggage from the suspect's custody, ... the limitations applicable to in-

---

4. The State also contends for the first time in this appeal that Appellant lacks standing to challenge the seizure of the suitcase. Because the State failed to raise this issue in the trial court, it has waived its consideration on appeal. *State v.*

*Main*, 159 Ariz. 96, 99, 764 P.2d 1155, 1158 (App.1988). Moreover, because Appellant's challenge of the trial court's ruling on the motion to suppress fails on the merits, we need not address the standing issue.

vestigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause." *Id.* at 709, 103 S.Ct. at 2645. An officer may detain a person in order to investigate criminal activity so long as such officer can "point to specific and articulable facts which, taken together with rational inferences from those facts," reasonably warrant the suspicion that a particular person had committed, was committing, or was about to commit a crime. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). Likewise, an officer may detain a suitcase at an airport based upon a "reasonable, articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime." *Place,* 462 U.S. at 702, 103 S.Ct. at 2642. Courts examine the totality of the circumstances to determine whether a detention is reasonable. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989).

Here, the totality of the circumstances supports the trial court's conclusion that the officers had a reasonable, articulable suspicion of criminal activity when they detained Appellant and seized his suitcase. Appellant was wearing a gray suit for an evening flight in late May, but carried neither a briefcase nor a garment bag. Rather, he carried a duffle bag and was dragging a new, large suitcase. Appellant arrived at the airport from Tucson on an Arizona Shuttle Service van. Eggert testified that it is "very common to catch people smuggling marijuana off that shuttle bus." Galbari observed Appellant pay the America West Airlines ticket agent in cash. She also felt the lump in the suitcase, which she immediately identified from her seven years of experience in drug enforcement as a bale of marijuana. Woodward smelled the odor of hay when she squeezed the air out of the suitcase. Then, when Appellant was confronted, he was "extremely nervous." His hands were shaking and his face began perspiring when he handed his driver's license and airline ticket to Galbari.

These objective facts demonstrate that the officers had a reasonable, articulable suspicion of criminal activity when they detained Appellant and seized his suitcase. Accordingly, the trial court correctly concluded the detention and seizure did not violate the Fourth and Fourteenth Amendments.

### 3. Reasonable Duration Of The Detention.

■ Appellant contends that the duration of the investigative detention was unreasonable and therefore violated the Fourth and Fourteenth Amendments. We disagree.

When considering the reasonableness of the duration of an investigative detention, the United States Supreme Court has "decline[d] to adopt any outside time limitation...." *Place,* 462 U.S. at 709, 103 S.Ct. at 2646. It has noted that "[m]uch as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).[5] Rather, the Court "examine[s] whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain" a person or luggage. *Id.* at 686, 105 S.Ct. at 1575. Finally, the Court has instructed that "[t]he question is not simply whether some other alternative [means of investigation] was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.* at 687, 105 S.Ct. at 1576.

Here, Galbari and Woodward examined Appellant's suitcase at approximately 10:10 p.m. Appellant was confronted immediately thereafter and was detained along with his suitcase once he refused to give consent to a search. At that point, Galbari called her supervisor and arranged to have a narcotics detection dog sniff the suitcase. Appellant was transported from Terminal Four to the security office in Terminal Three, where Crackers alerted onto the suitcase at approximately 10:55 p.m. Galbari testified that it

---

**5.** The Court, nevertheless, has held that a ninety-minute detention of luggage "is sufficient to render the seizure unreasonable...." *Place,* 462 U.S. at 710, 103 S.Ct. at 2646.

would have taken Appellant approximately twenty minutes to reach his gate in Terminal Four; his flight was scheduled to depart at approximately 11:30 p.m.

We conclude that the officers pursued their investigation in a "diligent and reasonable manner." *Id.* Indeed, nothing about the duration of the detention of Appellant and the seizure of his suitcase suggests otherwise. Accordingly, there was no violation of the Fourth and Fourteenth Amendments.

In sum, we agree with the trial court that the Fourth and Fourteenth Amendments to the United States Constitution were not violated by the initial squeezing and smelling of Appellant's bag, by the detention of Appellant and the seizure of his suitcase, and by the duration of the investigative detention. Accordingly, the trial court properly denied Appellant's motion to suppress.

### B. *Preclusion Of Evidence.*

■ Appellant next contends that the trial court abused its discretion by precluding him from calling three witnesses and from offering his documentary evidence as a sanction for late disclosure. We agree.

Rule 15.2, Arizona Rules of Criminal Procedure ("Rule"), provides in pertinent part:

**b. Notice of Defenses.** Within 20 days after the arraignment in Superior Court, ... the defendant shall provide the prosecutor with a written notice specifying all defenses as to which the defendant will introduce evidence at trial, including, but not limited to, alibi, insanity, self-defense, entrapment, impotency, marriage, insufficiency of a prior conviction, mistaken identity, and good character. The notice shall specify for each defense the persons, including the defendant, whom the defendant will call as witnesses at trial in support thereof. It may be signed by either the defendant or defendant's counsel, and shall be filed with the court.

**c. Disclosures by Defendant.** Simultaneously with the notice of defenses submitted under Rule 15.2(b), the defendant shall make available for examination and reproduction:

(1) The names and addresses of all persons, other than that of the defendant, whom he or she will call as witnesses at trial, together with all statements made by them in connection with the particular case;

. . . . .

(3) A list of all papers, documents, photographs and other tangible objects which the defendant will use at trial.

Rule 15.6 establishes the continuing duty to disclose and provides:

If at any time after a disclosure has been made any party discovers additional information or material which would be subject to disclosure had it then been known, such party shall promptly notify all other parties of the existence of such additional material, and make an appropriate disclosure.

Rule 15.7 addresses the sanctions that can be imposed for discovery violations and provides:

a. If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any provisions of this rule or any order issued pursuant thereto, the court may impose any sanction which it finds just under the circumstances, including, but not limited to:

(1) Ordering disclosure of the information not previously disclosed.

(2) Granting a continuance.

(3) Holding a witness, party, or counsel in contempt.

(4) Precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; and

(5) Declaring a mistrial when necessary to prevent a miscarriage of justice.

There are competing interests that must be considered when reviewing a court's decision to preclude a criminal defendant's evidence as a sanction for a discovery violation. On one hand, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense" pursuant to the Compulsory Process Clause of the Sixth Amendment. *Chambers v. Mississippi,* 410

U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). On the other hand, the state has interests "in the orderly conduct of a criminal trial[,]" "in protecting itself against an eleventh hour defense[,]" and in preserving "the integrity of the adversary process...." *Taylor v. Illinois*, 484 U.S. 400, 411–14, 108 S.Ct. 646, 654–56, 98 L.Ed.2d 798 (1988).

In *Taylor*, the United States Supreme Court rejected the argument that preclusion of a criminal defendant's evidence is never a permissible sanction for a discovery violation. *Id.* at 416, 108 S.Ct. at 656–57. However, instead of crafting a specific test for preclusion, the Court highlighted various considerations to guide courts, stating:

> It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential for prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id.* at 414–15, 108 S.Ct. at 656.

■ This court considered *Taylor* in *State v. Delgado*, 174 Ariz. 252, 257, 848 P.2d 337, 342 (App.1993), and determined that Arizona courts reviewing the preclusion of a criminal defendant's evidence should continue to use the four-part test enumerated by the Arizona Supreme Court in *State v. (Joe U.) Smith*, 140 Ariz. 355, 359, 681 P.2d 1374, 1378 (1984). These four factors are: (1) How vital the evidence is to the case; (2) whether the opposing party will be surprised; (3) whether the discovery violation was motivated by bad faith; and (4) any other relevant circumstances. *Delgado*, 174 Ariz. at 257, 848 P.2d at 342. This court further noted that preclusion of evidence "is *rarely* an appropriate sanction for a discovery violation." *Id.* (emphasis added).

■ Finally, we recognize that precluding a criminal defendant's evidence as a sanction for a discovery violation is a matter left to the sound discretion of the trial court, which will not be disturbed absent a clear abuse of discretion. *State v. Hill*, 174 Ariz. 313, 325, 848 P.2d 1375, 1387, *cert. denied*, —— U.S. ——, 114 S.Ct. 268, 126 L.Ed.2d 219 (1993).

### 1. Application Of (Joe U.) Smith Factors.

In the present case, there is no dispute that Rules 15.2 and 15.6 were violated. Rather, Appellant challenges only the sanction imposed pursuant to Rule 15.7—preclusion. We therefore apply the four *(Joe U.) Smith* factors to the present case.

### a. Vital Evidence.

In *(Joe U.) Smith*, the Arizona Supreme Court recognized that evidence is vital if it "add[s] considerable weight to the defendant's argument...." 140 Ariz. at 359, 681 P.2d at 1378. In that case, the court concluded that the precluded alibi testimony of the boyfriend of the defendant's sister was vital, even though such testimony would have mirrored the testimony of the defendant and his sister. *Id.*

Here, even though defense counsel conceded that the testimony of the three witnesses—Ginther, Shumard, and Ginger—was merely foundational for the documentary evidence, the documentary evidence was vital. One precluded exhibit was the America West Airlines records for Hessberger (Kenefick) and Appellant. These records contained tickets that were consecutively numbered—the first in the name of Hessberger and the next in the name of Appellant. Both tickets were issued on the day of the outbound flight from Newark to Phoenix, and both were purchased with cash. Moreover, the records listed the same phone number for both Hessberger and Appellant. Another precluded exhibit was the Pueblo Inn Records. Not only did these indicate that Kenefick and Appellant rented adjacent rooms, but they also demonstrated that although several calls were made from Kenefick's room, none were made from Appellant's room.

Clearly, this evidence "would have added considerable weight" to Appellant's defense—that he had no knowledge of the contents of Kenefick's suitcase and that he was merely doing a favor for a friend by delivering the suitcase to Kenefick's wife in New York. The documentary evidence—referred to by defense counsel in his opening statement, but never seen by the jury—corroborated [6] Appellant's testimony about Kenefick by demonstrating that Appellant travelled to Arizona with Hessberger (Kenefick), travelled from Phoenix to Tucson and back to Phoenix on the Arizona Shuttle Service, and stayed at the Pueblo Inn in the room next to Kenefick. As in *(Joe U.) Smith*, the precluded evidence here was vital.

### b. *Surprise.*

■ The prosecution's allegation of surprise is legitimate. Defense counsel first informed the prosecutor about the three witnesses during the informal conference immediately before voir dire on March 2, 1994. Moreover, the prosecutor and the court first learned about Appellant's documentary evidence during defense counsel's opening statement that same day. It bears mention that defense counsel had obtained a subpoena duces tecum on February 24, 1994, for Ginger employed by Arizona Shuttle Service, Inc., for the legal department of America West Airlines, and for the custodian of records at the Pueblo Inn. Counsel could have disclosed the investigation at that time, if not earlier. Finally, we note that there was no indication whatsoever prior to the first day of trial that Appellant would deny ownership of the suitcase. In fact, quite the opposite was true—not only did the motion to suppress refer to "Killean's suitcase" and "Killean's luggage," but defense counsel also argued vigorously during the two days of hearings that the marijuana should be suppressed because Appellant's Fourth Amendment rights had been violated. Clearly, the prosecution was surprised by this evidence.

### c. *Bad Faith Or Willful Misconduct.*

■ The trial court expressly addressed the third factor, stating: "I don't find that [defense counsel] acted in bad faith. I just think [counsel was] dilatory and negligent in not doing what is clearly provided by the Rules of Discovery." *Reporter's Transcript of Proceedings*, March 8, 1994, 10:00 a.m. volume, at 30–31. Then, immediately before imposing the sanction of preclusion, the court reiterated its findings, stating: "I just frankly think you were just late in getting your case together, is what it sounds like to me." *Id.* at 40. The court made these findings after sitting through two days of suppression hearings and three days of trial. Not only was the trial court in the best position to make these findings, but they also were supported by reasonable evidence. Counsel stated that there was no disclosure because Appellant lived in New York, was in Arizona only for the suppression hearings, and waived his presence at most of the pre-trial hearings. Defense counsel also noted that even though Kenefick was discussed previously, he was uncertain whether the existence of Kenefick could be proven. Finally, counsel argued that all the documentary evidence could have been identified because America West Airlines, the Pueblo Inn, and the Arizona Shuttle Service all were mentioned in the police report.

Although these reasons did not justify defense counsel's non-disclosure, they are reasonable evidence supporting the trial court's conclusion that counsel was negligent. Where there is any reasonable evidence in the record to sustain the trial court's findings, "we cannot substitute our view of the record for that of ... the trial [court]...." *Petefish By And Through Clancy v. Dawe*, 137 Ariz. 570, 577, 672 P.2d 914, 921 (1983); *see also State v. Veatch*, 132 Ariz. 394, 396, 646 P.2d 279, 281 (1982). Although a conclusion that defense counsel's conduct constituted bad faith or willful misconduct certainly could be supported by the record,[7] we none-

---

**6.** The trial court expressly acknowledged the corroborative value of this evidence when it stated: "[A]side from [Appellant's] testimony, [the defense has] paper evidence to corroborate his defense...." *Reporter's Transcript of Proceedings*, March 8, 1994, 10:00 a.m. volume, at 29–30.

**7.** Several factors could have supported such a conclusion: (1) the failure to disclaim ownership

theless must adhere to the trial court's conclusion.

#### d. Other Circumstances.

Several other circumstances merit discussion as well. First, we consider the effectiveness of less severe sanctions. *Taylor*, 484 U.S. at 415 n. 19, 108 S.Ct. at 656 n. 19 (citing *Fendler v. Goldsmith*, 728 F.2d 1181, 1188–90 (9th Cir.1983)). Recognizing the recent instruction of the Arizona Supreme Court that "a discovery sanction should be proportionate to the harm caused ... [and] should cure that harm to the maximum practicable extent[,]" *State v. Krone*, 182 Ariz. 319, 897 P.2d 621, 624 (1995), we note that the court prudently did not impose the sanction of preclusion immediately. Rather, it imposed a lesser sanction by ordering defense counsel to disclose all of the information to the prosecution and then waited to determine whether the prosecution was prejudiced. After the court learned that the prosecution's investigation was fruitless, however, it then imposed the sanction of preclusion. There was no discussion of other sanctions—a continuance or a mistrial—even though they could have remedied the prejudice and surprise to the prosecution and yet protected Appellant's right to present vital evidence.

Second, although we have already discussed the surprise to the prosecution, the prejudice to the prosecution also merits consideration. *Taylor*, 484 U.S. at 415 n. 19, 108 S.Ct. at 656 n. 19 (citing *Fendler*, 728 F.2d at 1188–90). After defense counsel mentioned Kenefick during his opening statement, the prosecution wanted to interview Kenefick but was unable to locate him until after Appellant provided his phone number while testifying at trial. When the prosecution contacted Kenefick, he denied any involvement in this matter and stated that he would not cooperate or appear unless subpoenaed. Although defense counsel conducted his investigation immediately before trial, we cannot ignore the fact that he had months to do so. The prosecution, on the other hand, had only a matter of days for its investigation. Because of the late disclosure and the brevity of the trial, the prosecution was prejudiced because it could not produce Kenefick as a witness at trial nor fairly investigate his involvement in this matter.

#### 2. Is Bad Faith Necessary To Preclude A Criminal Defendant's Vital Evidence?

We now inquire whether, absent bad faith or willful misconduct, a trial court can preclude a criminal defendant's vital evidence as a sanction for a discovery violation, thereby depriving such defendant of his or her Sixth Amendment right "to present witnesses in his [or her] own defense." *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049.

The federal and state courts that have addressed this question have cited *Taylor*, in which the United States Supreme Court stated:

> If [counsel's] explanation [for the discovery violation] reveals that the omission *was willful and motivated by a desire to obtain a tactical advantage* that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

484 U.S. at 415, 108 S.Ct. at 656 (emphasis added). Based on *Taylor*, a majority of courts have concluded that preclusion of a criminal defendant's vital evidence is a proper sanction when the conduct of defense counsel or the defendant constitutes bad faith or willful misconduct.[8] Although there

---

of the suitcase until after the suppression hearings gave Appellant the benefit of a ruling on the merits of the challenged search and seizure, to which he otherwise would not have been entitled, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (criminal defendant cannot claim benefits of exclusionary rule when own rights not violated); (2) defense counsel's discovery of Kenefick occurred only after Appellant's motion to suppress had been denied; and (3) defense counsel issued three subpoenas duces tecum on February 24, 1994, but did not disclose anything until after he was ordered to do so on March 2, 1994—the first day of trial.

8. *Michigan v. Lucas*, 500 U.S. 145, 152, 111 S.Ct. 1743, 1747–48, 114 L.Ed.2d 205 (1991); *Bowling v. Vose*, 3 F.3d 559, 561 (1st Cir.1993) (preclusion sustained when party "willfully violates discovery rules to gain a tactical advantage in litigation"); *United States v. Peters*, 937 F.2d 1422,

are a few cases in which courts have upheld the preclusion of a criminal defendant's vital evidence without a finding of bad faith or willful misconduct,[9] there are sound reasons for adopting the majority position.

When vital evidence is precluded as a sanction for a discovery violation, a litigant is vicariously punished for the wrongful conduct of counsel. Without question, this severe sanction may be appropriate in certain circumstances. But when the litigant whose vital evidence is precluded is *a criminal defendant,* the severity of this vicarious sanction intensifies because the defendant's liberty interest and constitutional right to present exculpatory evidence are implicated. This was eloquently expressed by Justice Brennan's dissent in *Taylor,* when he noted, "Deities may be able to visit the sins of the father on the son, but ... courts should [not] be permitted to visit the sins of the lawyer on the innocent client." 484 U.S. at 433, 108 S.Ct. at 666 (Brennan, J., dissenting). In this context, it is understandable why the preclusion of a criminal defendant's evidence is an appropriate sanction for only the most egregious conduct.

■■■ We therefore hold that a criminal defendant's vital evidence can be precluded as a sanction for a discovery violation only where the conduct of defense counsel and/or the defendant constitutes bad faith or willful misconduct.

Our opinion today reiterates the point made in *Delgado*—namely, that preclusion of evidence "is *rarely* an appropriate sanction

for a discovery violation." 174 Ariz. at 257, 848 P.2d at 342 (emphasis added). Even though some may construe our holding as providing a license for criminal defense attorneys to ransack the rules of discovery, this is not the case. Rule 15.7 does not provide an exhaustive list of sanctions; rather, it expressly reserves to the court the right to "impose *any sanction* which it finds just under the circumstances...." (Emphasis added.)

Here, the trial court expressly considered whether counsel's conduct constituted bad faith. It concluded, instead, that the discovery violations occurred because counsel was negligent. Under these circumstances, the court should have chosen a sanction which did not deprive Appellant of his constitutional right to present this vital evidence as part of his defense. The sanction actually imposed—preclusion—was too severe.

Accordingly, we conclude that the court abused its discretion by precluding Appellant's three witnesses and documentary evidence as a sanction for defense counsel's discovery violation.

### 3. The Dissent.

The dissent concludes that preclusion of Appellant's three witnesses and documentary evidence was a proper exercise of the court's discretion and would affirm Appellant's convictions and sentences. To reach this conclusion, it first disagrees that bad faith or wrongful misconduct is required to preclude

---

1426 (9th Cir.1991) (preclusion permissible when "willful and blatant discovery violations" occur); *Escalera v. Coombe,* 852 F.2d 45, 48 (2d Cir.1988) (absence of good excuse "not necessarily commensurate with 'willful' conduct," nor is attorney "inadvertence or even gross negligence"); *Chappee v. Vose,* 843 F.2d 25, 30 (1st Cir.1988) (preclusion upheld when defense attorneys "willfully and flagrantly failed to comply with rule of continuing disclosure"); *People v. Edwards,* 17 Cal.App.4th 1248, 22 Cal.Rptr.2d 3, 12 (1993) (preclusion sanctions "should be reserved to those cases in which the record demonstrates a willful and deliberate violation which was motivated by a desire to obtain a tactical advantage at trial"); *People v. Richards,* 795 P.2d 1343, 1346 (Colo.App.1989) (preclusion appropriate when discovery violation "arises out of conduct of a character and magnitude tantamount to 'sandbagging.' A mere 'eleventh hour'

disclosure of an additional defense that is unaccompanied by willful misconduct, dishonesty, or repeated discovery violations, is ordinarily insufficient to come within this exception."). *See also* *State v. Passino,* 161 Vt. 515, 640 A.2d 547, 551 (1994) (one focus is willfulness of discovery violation); *McCarty v. State,* 107 N.M. 651, 763 P.2d 360, 364 (1988) (one focus is willful misconduct).

**9.** *Tyson v. Trigg,* 50 F.3d 436, 445 (7th Cir.1995) (court recognizes difference of opinion among circuits regarding necessity of bad faith, but declines to adopt "hard-and-fast rule"); *United States v. Cervone,* 907 F.2d 332, 346 (2d Cir. 1990) (affirming preclusion with no discussion of bad faith); *United States v. Johnson,* 970 F.2d 907, 910–11 (D.C.Cir.1992), *but see United States v. Johnson,* 815 F.Supp. 492, 494 (D.D.C.1993).

a criminal defendant's vital evidence pursuant to the *Taylor* line of cases. It then asserts that because appellate courts apply the *(Joe U.) Smith* factors de novo, this court can reach the conclusion that defense counsel here willfully violated the rules of discovery. Finally, the dissent voices concerns for the majority of "conscientious practitioners who follow the rules." There is facial appeal to these arguments, but we respectfully suggest that they are unpersuasive.

First, the authority relied upon by the dissent for the proposition that bad faith or willful misconduct is *not* necessary to preclude a criminal defendant's vital evidence can be distinguished. Although the Arizona Supreme Court did uphold the preclusion of a criminal defendant's evidence in *State v. Talley,* 112 Ariz. 268, 270, 540 P.2d 1249, 1251 (1975), based upon the constitutionality of schemes requiring timely disclosure, *Talley* preceded both *(Joe U.) Smith*—the case in which the Arizona Supreme Court enumerated the four factors to guide courts when precluding evidence—and *Taylor.* The dissent also supports its position with *United States v. Seeright,* 978 F.2d 842, 848 (4th Cir.1992). *Seeright,* however, neither cited nor discussed *Taylor.* Finally, the dissent relies upon *United States v. Johnson,* 970 F.2d 907, 910–11 (D.C.Cir.1992), a case in which the court declined to require bad faith or willful misconduct to preclude a criminal defendant's vital evidence. *Johnson* stands alone as the only case in which a court addressed the preclusion issue in light of

*Taylor* and expressly refused to require bad faith or willful misconduct. *Moreover,* when *Johnson* was remanded, the district court noted that its express finding that *defense counsel* acted in good faith "implicitly conveyed [its] belief that it was the defendant who acted in bad faith." *United States v. Johnson,* 815 F.Supp. 492, 494 (D.D.C.1993).

The application of the *de novo* standard in the dissent merits comment as well. The dissent correctly cites *Bowling v. Vose,* 3 F.3d 559, 561 n. 4 (1st Cir.1993), for the proposition that the weighing of factors identified in *Taylor* is a legal question that should be reviewed de novo. Nevertheless, *Bowling* does not authorize us to substitute our own findings for those made by the trial court that are supported by reasonable evidence.[10] Rather, we must re-weigh the trial court's findings that are supported by reasonable evidence to determine whether preclusion was an appropriate sanction under the circumstances. We have done this here. The trial court's finding that defense counsel did not act in bad faith was supported by reasonable evidence. Accordingly, when we re-weigh all of the factors here, we must accept the trial court's findings regarding the absence of bad faith or willful misconduct.

Finally, this opinion does not penalize the conscientious practitioners who comply with the spirit of the rules of discovery. Indeed, we recognize that attorneys whose discovery violations constitute bad faith or willful misconduct should be sanctioned.[11] Rather, our opinion today reiterates that the constitution-

---

**10.** The trial court's express findings that defense counsel's conduct constituted negligence, not bad faith or willful misconduct, make the present case factually distinguishable from *United States v. Mason,* 902 F.2d 1314, 1315 (8th Cir.1989). In *Mason,* the court upheld the preclusion of a criminal defendant's evidence by inferring from the record that the violation was willful. *Id.* There, however, the court was able to make reasonable inferences from the evidence to uphold the trial court's ruling because the trial court did not make any findings about the willfulness of the violation. *Id.* (citing *United States v. Gonzales,* 897 F.2d 504, 506 (10th Cir.1990)). In the present case, however, the trial court expressly found that defense counsel's conduct constituted negligence, not bad faith or wrongful misconduct. Although *Mason* recognizes that an appellate court can make reasonable inferences from the record in the absence of findings, it

does not stand for the proposition that an appellate court can substitute its own findings for those of the trial court that are supported by reasonable evidence.

**11.** "[D]irectly sanctioning the attorney is not only fairer but *more* effective in deterring violations than excluding defense evidence. [Citation omitted.] The threat of disciplinary proceedings, fines, or imprisonment will likely influence attorney behavior to a far greater extent than the rather indirect penalty threatened by evidentiary exclusion." *Taylor,* 484 U.S. at 433, 108 S.Ct. at 665 (Brennan, J., dissenting) (emphasis in original); *see also People v. Foster,* 271 Ill.App.3d 562, 207 Ill.Dec. 881, 885, 648 N.E.2d 337, 341 (1995) ("trial courts should always consider personal sanctions … against attorneys who willfully violate discovery orders in criminal cases").

al right of a criminal defendant to present vital evidence on his or her own behalf cannot be deprived as a vicarious sanction for defense counsel's *negligence.*

For the forgoing reasons, we reverse and remand for a new trial.

NOYES, P.J., concurs.

THOMPSON, Judge, concurring in part, dissenting in part.

I concur with the majority's resolution of the search and seizure issues raised in this appeal and therefore join in part A of the decision. Because I conclude that the trial judge did not abuse his discretion in precluding defense witnesses and documentary evidence, I dissent from the holding and discussion set forth in part B.

The failure of the defense ever to have disclosed, prior to defendant's opening statement, that a defense that the real wrongdoer was Ed Kenefick would be employed and that certain witnesses and documents would be offered in support of such defense, was a blatant violation of Rule 15 which, the trial court reasonably found, prejudiced the state. The only "excuse" offered for this obvious concealment [12] was that the defendant was living in New York and did not assist with the preparation of the defense. Neither defendant's declination to assist in the preparation of his defense nor defense counsel's doubts as to the viability of the undisclosed defense justify a blatant and prejudicial violation of the rules compelling timely disclosure.

The majority concludes that evidence preclusion cannot be upheld here because the trial court did not find defense counsel to have acted in bad faith. I am aware of no case law that requires such a finding. Indeed, our supreme court has upheld the preclusion of defense evidence based simply on the fact of untimely disclosure, relying on the constitutionality of schemes which require timely disclosure by criminal defendants in *State v. Talley,* 112 Ariz. 268, 270, 540 P.2d 1249, 1251 (1975), and on the need to apply Rule 15 "with equal force to both the prosecution and the defendant" in *State v. Dorow,* 116 Ariz. 294, 295, 569 P.2d 236, 237 (1977).

With one exception, the federal courts have not squarely faced the question as to whether the preclusion of untimely disclosed defense evidence can ever be upheld absent a finding of bad faith or willful misconduct. In *United States v. Johnson,* 970 F.2d 907, 910–11 (D.C.Cir.1992), the appeals court held that bad faith is an "important factor" but not an "absolute condition for exclusion" in determining the sanction for untimely defense disclosure, and went on to uphold evidence preclusion notwithstanding the trial court's finding that defense counsel had acted in good faith. *See United States v. Seeright,* 978 F.2d 842, 848 (4th Cir.1992) (upholding preclusion of witnesses not named in disclosure notwithstanding that defense had timely identified defense to be employed and had disclosed that witnesses would be called in support of identified defense). And, while in *United States v. Peters,* 937 F.2d 1422, 1426 (9th Cir.1991), the court expressed its belief that "the [United States Supreme] Court has upheld the drastic remedy of excluding a witness only in cases involving 'willful and blatant' discovery violations," there was no discovery violation, willful or otherwise, found in *Peters.* [13]

Further, whether or not the trial court here believed that the defense acted in bad

**12.** Defendant had purportedly known Kenefick even before the incidents that led to the charges in this case, and did not come belatedly to learn of Kenefick's supposed role in those incidents; indeed, trial counsel for the defendant admitted that defendant had, at some point before trial, told him about Kenefick, but that counsel had not timely disclosed the information because he "was uncertain as to whether or not it was susceptible of being established." The defense simply kept the whole Kenefick scenario to itself until the most advantageous time, after trial had begun.

**13.** In *People v. Edwards,* 17 Cal.App.4th 1248, 22 Cal.Rptr.2d 3, 12 (1993), an appellate court opined that preclusion "should be reserved" as a sanction for "willful" violations committed "to obtain a tactical advantage." However, in *Edwards,* it was unclear whether the discovery violation had afforded any tactical advantage to the defense. *Id.* Further, a California statute allows evidence preclusion only "as a last resort." *Id.* Neither of these circumstances are present in the instant case.

faith,[14] we are not bound by his remarks in this regard. The application of the factors that determine the propriety of evidence preclusion for untimely disclosure is a legal matter which we determine *de novo*. *Bowling v. Vose*, 3 F.3d 559, 561 n. 4 (1st Cir.1993). In light of the prosecution's compliance with the discovery rules and the defense's clear violation of those rules in this case, and the obvious fact that sandbagging provides an unfair advantage to the violator, I would find a willful violation of the rules of reciprocal discovery, and affirm. *See United States v. Mason*, 902 F.2d 1314, 1315 (8th Cir.1989) (inferring willful violation from fact that defense knew and did not disclose that, as trial proceeded, witnesses were en route to testify).

I disagree with the notion that the availability of a nominally "less restrictive alternative" such as trial continuance or mistrial somehow alters the outcome of the balancing test dictated by *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 657–58, 98 L.Ed.2d 798 (1988). In my view, trial continuance or declaration of a mistrial with the jury empaneled and the trial already begun is extremely disruptive to judicial administration and to other societal and judicial values. When there is absolutely no excuse for the conduct which has occasioned the disruption, I cannot conclude that our trial courts must countenance such conduct. Division Two has noted that "heavy court congestion," which is certainly a fact of life for Arizona trial courts, justifies the rejection of a continuance as a sanction for the failure to make timely disclosure. *State v. Scott*, 24 Ariz.App. 203, 205, 537 P.2d 40, 42 (1975). And if it was true in this case, as the trial court found and the majority affirms, that defense counsel was dilatory in preparing for trial, postponing trial would have rewarded the defense for its discovery violations by allowing additional time to properly prepare.

To be sure, most lawyers in this state comply at least with the spirit of the rules of disclosure for criminal cases. I fear that the majority here has provided incentives for sandbagging and vitiated the rules requiring reciprocity of disclosure, thus penalizing the conscientious practitioners who follow the rules.

---

**14.** The trial judge termed defense counsel's excuses "baloney."