**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**KELVAN BROWN,**
**Defendant–Appellant.**

No. 88–5378.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 7, 1989.*

Decided Sept. 13, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Joseph T. Vodnoy and Joseph F. Walsh, Los Angeles, Cal., for defendant-appellant.

Stephen A. Mansfield, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, FARRIS and CANBY, Circuit Judges.

FARRIS, Circuit Judge:

Kelvan Brown appeals the district court's denial of his motion to suppress two kilograms of cocaine found in his suitcase. After the court denied his motion to suppress, Brown pleaded guilty to possession with intent to distribute cocaine. We affirm.

*Background*

At 11:15 p.m. on February 19, 1988, narcotics detectives May and Gossett saw Brown enter Los Angeles International Airport. He carried three pieces of luggage and a briefcase, all of which appeared to be new. He appeared to the officers to be nervous. After paying cash for a one-way ticket to Columbus, Ohio, Brown checked two of his suitcases. May and Gossett arranged to have Brown's luggage held. They asked Brown if they could speak to him; they informed him that he was not under arrest and that he was free to leave. The detectives then asked Brown if he understood and would talk with the officers. Brown said: "Yes, I understand. What is this all about?" As they spoke, Brown appeared increasingly nervous. When asked for some form of identification, Brown said he was not carrying any. When asked his name, Brown told the detectives that he was "Pearl Lang." Brown consented to a pat-down search and to a search of the luggage he was carrying. During the pat-down, detective Gossett noticed what felt like a card and a set of keys. Brown voluntarily removed the card and showed it to the officers. It was a driver's license identifying Brown by his true name. The detectives asked Brown if they could search his checked luggage. He replied: "Sure, you can search it." The luggage was locked, and the detectives asked Brown for the keys. Brown said the keys

were in Ohio. At detective Gossett's request, Brown removed a set of keys from his pocket. The keys appeared to be luggage keys. Brown stated that the keys would not open his checked suitcases. The detectives asked whether Brown would accompany them to try the keys in the luggage. Brown asked: "Do I have to go?" The detectives replied that he did not, but that he would be detained while his luggage was checked. Brown was handcuffed pending the outcome of the search. The keys Brown provided opened the checked luggage which was found to contain about two kilograms of cocaine.

*Standard of Review*

We review de novo the lawfulness of a search. *United States v. Limatoc,* 807 F.2d 792, 794 (9th Cir.1987). Findings of historical fact made at a suppression hearing are reviewed for clear error. *Id.*

*Discussion*

Brown claims that the detectives violated his Fourth Amendment rights by initially stopping him and holding his checked suitcases. The district court correctly held that neither initially approaching Brown nor holding his baggage constituted a seizure of person or property implicating Fourth Amendment rights.

The detectives' initial contact with Brown was not a seizure of his person. While arrests and investigatory stops are seizures, "not all encounters between law enforcement agents and citizens amount to seizures of the person." *United States v. Safirstein,* 827 F.2d 1380, 1383 (9th Cir. 1987). A person is " 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). A reasonable person in Brown's shoes would have believed he was free to leave. The detectives approached Brown in public. They did not display weapons, touch Brown, or restrain him in any way. They asked in a non-threatening way if they could speak to Brown and told

him explicitly that he was free to go. Brown agreed to speak with the detectives. This was a consensual encounter. *See United States v. $25,000 U.S. Currency,* 853 F.2d 1501, 1505 (9th Cir.1988).

Brown claims that his checked suitcase was unlawfully seized. We must determine whether the brief diversion of Brown's suitcases from their journey to the cargo hold was a seizure. This is a question of first impression in this circuit. "A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). In *United States v. Lovell,* 849 F.2d 910 (5th Cir.1988), the Fifth Circuit held that briefly delaying checked luggage by removing it from a conveyor belt was insufficient to constitute a meaningful interference with possessory interests. The *Lovell* court distinguished *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). There, the court held that taking luggage from a person's custody was a seizure. The *Lovell* court noted the distinction between taking property from a traveler's custody and merely detaining bags which the traveler has already relinquished to a third-party common carrier. We agree with the Fifth Circuit's approach. Had Brown not eventually consented to a search, the brief detention of his bags would have in no way interfered with his travel or frustrated his expectations with respect to his luggage. No seizure occurred.

Brown next contends that his consent to the search of his luggage was not voluntary. We review the district court's factual conclusion that consent was voluntary for clear error. *United States v. Vasquez,* 858 F.2d 1387, 1389 (9th Cir.1988). The court's conclusion was not clearly erroneous. No threats, show of force, or restraints were employed at the time the detectives asked for Brown's consent to the search. The detectives did not use a harsh or intimidating tone of voice. Brown was informed that he was free to leave. He made statements throughout the encounter which manifested understanding of what

**1312**

was occurring. Any reluctance Brown showed in admitting he was carrying the keys to his luggage was not enough to indicate he had withdrawn his unambiguous statement of consent. The district court properly found that Brown consented to the search.

AFFIRMED.