990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antoine Dewayne PERSLEY, Defendant-Appellant.
 No. 90-50579.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1992.
Decided March 18, 1993.
 
 Before POOLE, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 Appellant Antoine Dewayne Persley appeals his conviction for possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). Persley asserts that the law enforcement officers who stopped him at the Los Angeles International Airport had no reasonable suspicion upon which to justify his detention, and argues that he did not consent to a warrantless search of his luggage. By Order dated March 19, 1992, this court remanded the case for clarification of the district court's findings on whether Persley consented to the luggage search. In a Response to Order of Remand received January 13, 1993, the district court indicated that it found the search consensual. We now affirm.
 
 II.
 
 3
 On March 15, 1990 at approximately 4:30 p.m., Drug Enforcement Administration agent Rick Wammack observed Persley purchase an airline ticket at the Delta Airlines ticket window at Los Angeles International Airport (LAX). Persley purchased the ticket with a wad of cash. He was carrying one suitcase and a plastic shopping bag. Persley then walked to LAX Gate 51A to wait for his boarding call.
 
 
 4
 Wammack followed Persley to the gate area and fifteen minutes later confronted him. Wammack tapped Persley on the shoulder from behind and then used his badge to identify himself as a law enforcement officer. Persley responded to the unexpected tap on his shoulder by raising his arms in the air. According to Persley, agent Wammack told him that "he should not make a big scene out of the situation." Wammack testified that Persley agreed to speak with him. Wammack also informed Persley that he was not under arrest and was free to leave. Persley told Wammack he understood this.
 
 
 5
 Persley testified that while he was lowering his arms another individual--Los Angeles police officer Jeff Christ--performed a "pat down" search. Persley asserts that as a result of this, he agreed to speak with the agents. Wammack asked Persley to produce identification and his plane ticket, and Persley handed over an Ohio identification card and a one-way ticket from Los Angeles to Cincinnati. The ticket was issued in Persley's name, had a face value of $520, and was purchased with cash. The defendant's flight was scheduled to depart at 5:55 p.m. Wammack returned both the identification card and the ticket to Persley.
 
 
 6
 Agent Wammack then pursued a discussion of Persley's travel plans. Persley explained that he had come to the Los Angeles area to visit a friend residing in Long Beach, but did not give any other details about his friend. In response to Persley's request to explain why the agent was asking him questions, Wammack responded that he was conducting narcotics surveillance and asked Persley if he was carrying drugs or large sums of money.
 
 
 7
 The parties dispute who broached the subject of a search of Persley's bags. Persley maintains that Wammack asked him if he would consent to a search. The government, on the other hand, asserts that Persley offered to allow Wammack to conduct the search and pushed the bags toward the agent. Persley also maintains that one of the agents began searching inside the bags before the request was made and that he responded, "why do you ask me that, you are doing it already."
 
 
 8
 In response to Wammack's question about large sums of money, Persley replied that he was carrying several thousand dollars, and showed the money to one of the agents. The money consisted of a large number of small denomination bills.
 
 
 9
 Inside Persley's suitcase Wammack found a plane ticket receipt for a prior trip from Cincinnati to Los Angeles in the name "Lutie Reed." The ticket's value was $520 and had been purchased with cash. Persley explained that it had been issued in a friend's name because the friend had made the reservation for him. One of the agents then asked to frisk Persley, and Persley agreed. In an attempt to find more money on Persley's person, the agent patted down defendant's clothing in the area of his pockets and the small of his back.
 
 
 10
 Wammack then asked Persley if he would accompany the agents to the airport's DEA office. Wammack explained that the office was located near Gate 51A and that Persley would still be able to catch his flight. During the subsequent walk together, Wammack asked Persley if the money belonged to him. Persley said it did, explaining that it was a loan from a friend named Tyrone. Persley was not able to provide Tyrone's last name.
 
 
 11
 Once inside the DEA office, Wammack looked inside a shoe box he found inside Persley's shopping bag. Concealed in a pair of shoes Wammack found a shipping receipt from Greyhound, Inc. The receipt showed that a package had been sent that afternoon from the bus terminal in Long Beach by a person named Tony Brown.
 
 
 12
 Wammack called the Long Beach Greyhound terminal and arranged to have a narcotics detection dog sniff the package. After being informed that the canine search alerted to the presence of narcotics inside the package, Wammack arrested Persley. Ultimately, over a kilogram of cocaine base was discovered in the package.
 
 
 13
 Persley moved in the district court to suppress the cocaine. He argued that he and his bags had been unlawfully detained and that he had never consented to any search of his person or belongings. The court denied the motion, holding that the detention in the corridor near Gate 51A and in the DEA office were justified because the agents had a reasonable suspicion that Persley was engaged in transporting narcotics. In support of this holding the district court noted the large amount of cash Persley used to purchase his plane ticket, the small number of days Persley stayed in the Los Angeles area, the lack of details he provided about his friend whom he had purportedly visited, the airline ticket's issuance in another name, the cost of the round-trip airline fare, Persley's failure to provide the last name of the person who loaned him the $4000, and the presence of the shipping receipt concealed in the shoes.
 
 
 14
 Persley was convicted after a jury trial and was sentenced to 200 months in prison followed by five years of supervised release.
 
 III.
 
 15
 We review denial of a motion to suppress de novo, United States v. Erwin, 803 F.2d 1505, 1509-10 (9th Cir.1986), and will overturn factual findings underlying such a denial only if clearly erroneous. United States v. $25,000 U.S. Currency, 853 F.2d 1501, 1506 (9th Cir.1988). The evidence adduced at a suppression hearing must be viewed in the light most favorable to the prevailing party. United States v. Cervantes-Gaitan, 792 F.2d 770, 772 (9th Cir.1986).
 
 
 16
 Persley argues that the drug evidence should have been suppressed because his original encounter with the DEA agents was an illegal detention not supported by reasonable suspicion. Before determining whether the officers in this case had the reasonable suspicion necessary to justify a detention of Persley, we must decide whether in fact Persley was ever seized. United States v. Johnson, 903 F.2d 1219, 1221 (9th Cir.), cert. denied, 111 S.Ct. 520 (1990). If no seizure occurred the fourth amendment's reasonable suspicion requirement for investigative detentions does not apply. Johnson, 903 F.2d at 1221-22. In deciding whether a seizure occurred, the court must examine the totality of the circumstances and determine whether Persley reasonably believed that he was not free to leave. Id. at 1221.
 
 A.
 
 17
 The government argues that Persley was not seized because he consented to being questioned in the airport corridor. This court reviews the district court's finding of fact on this issue for clear error. United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989), cert. denied, 493 U.S. 1025 (1990).
 
 
 18
 The district court properly concluded that Persley consented to the initial questioning by agent Wammack in the corridor outside Gate 51A. Upon getting Persley's attention by tapping him on the shoulder, agent Wammack asked Persley if he would answer some questions. Persley indicated that he would, and Wammack then informed Persley that he was not under arrest and was free to leave. After responding to a few questions from the officers, Persley asked them why they had stopped him. Agent Wammack explained that his job was to interview persons suspected of smuggling narcotics or drug money through the airport. At no time did Wammack or Church display a weapon or use threatening language. While the district court made no express finding on the fact, officer Church testified that he asked for and received Persley's permission to pat down his clothing in search of additional currency. Persley does not contend that he did not give such permission.
 
 
 19
 These facts are similar to the situation in United States v. Brown, 884 F.2d at 1310-11. In that case detectives approached the defendant in LAX after observing him purchase an airline ticket with cash and noticing his nervousness. The detectives approached the defendant in the airport's public area, did not display weapons or touch him, and "asked in a non-threatening way if they could speak to [him] and told him explicitly that he was free to go." Id. The court found that the defendant had consented to the initial questioning by the detectives. See also Johnson, 903 F.2d at 1221 (finding consent under similar circumstances); United States v. Low, 887 F.2d 232, 233-34 (9th Cir.1989) (discussion with defendant before obtaining his airline ticket was consensual given public nature of confrontation and defendant's expressed willingness to answer questions). The district court committed no error on this point.
 
 B.
 
 20
 Persley contends that even if he was not seized at the time of the initial questioning, he was seized when the agents notified him that they were looking for people involved in narcotics smuggling. Initial questioning freely consented to may evolve into a seizure requiring reasonable suspicion. See Florida v. Royer, 460 U.S. 491, 499-502 (1983); United States v. Moreno, 742 F.2d 532, 536 (9th Cir.1984). Persley argues that the encounter with Wammack and Church became a seizure when the agents informed him that their job was to catch people attempting to carry drugs through the Los Angeles airport; he asserts that this explanation in practical effect notified him that he was the subject of a narcotics investigation.
 
 
 21
 However, such an "escalation" does not occur if the officers do not manifest any behavior that makes it any less likely that a person would feel free to leave. See, e.g., United States v. Espinosa, 827 F.2d 604, 608 (9th Cir.1987) (defendant was told that he was under arrest because suspected of involvement in narcotics trafficking), cert. denied, 485 U.S. 968 (1988); $25,000 U.S. Currency, 853 F.2d at 1504-05 (no escalation where detective asked to see airline ticket and then returned it); United States v. Low, 887 F.2d at 235 (finding escalation into a seizure where officer retained airline ticket). Here, the agents took no action that would have made Persley feel any less free to leave than when he first acquiesced in Wammack's questioning. Accordingly, the encounter in the corridor outside Gate 51A did not evolve into a seizure when Agent Wammack informed Persley that the law enforcement officers were attempting to locate and apprehend persons smuggling narcotics through the airport.
 
 IV.
 
 22
 Persley also argues that the agents illegally searched his luggage. Persley's consent was necessary for the search since no warrant was obtained, and since the Government does not contend exigent circumstances justified a search without one. Florida v. Royer, 460 U.S. at 497. In determining whether this search was consensual, the court must determine whether the consent was voluntarily given and not the result of duress or coercion. See Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973); $25,000 U.S. Currency, 853 F.2d at 1506. The totality of the circumstances are considered in making this determination, Schneckloth, 412 U.S. at 248-49, one upon which the government bears the burden of proof. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990).
 
 
 23
 Because the district court did not expressly indicate whether it found Persley consented to the luggage search, we remanded the case for a clarification of that issue. See Order dated March 19, 1992. In a Response to Order of Remand received January 13, 1993, the district court has confirmed that it found the search of Persley's luggage to be consensual. We must uphold that finding unless it is clearly erroneous. $25,000 U.S. Currency, 853 F.2d at 1504.
 
 
 24
 We find no clear error here. Agents Wammack and Church did not threaten Persley or display their weapons in an attempt to pressure him to accede to a search. Nor did the officers attempt to intimidate Persley, or at any time retract their assurance that Persley was free to leave. Accordingly, we conclude that the district court's finding of consent for the baggage search must be affirmed.
 
 
 25
 Because neither the officers' questioning of Persley nor their search of his luggage was illegal, the judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3