**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jiles Dalewin JOHNSON,
Defendant–Appellant.**

**No. 90–50329.**

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 18, 1992 *.

Decided April 7, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

**1130**

Michael Linfield, Law Offices of Michael Linfield, Los Angeles, CA, for defendant-appellant.

Melinda L. Haag, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This appeal raises two questions. First, did an unlawful search and seizure occur, when a traveler's luggage being held by the airline for transport on the next available flight was subjected to a dog sniff test by the DEA? Second, were references by the trial judge during voir dire to narcotics trafficking as a widespread scourge improper and prejudicial? We answer no to both questions and affirm the conviction.

## I. Facts.

Five minutes before the flight was scheduled to leave LAX, appellant Johnson bought a one-way ticket to Kansas City for $209 cash. Two narcotics officers were watching, and saw him make the purchase. Johnson acted nervous and looked around, not particularly at the clock and departure information, but up and down the counter at people in the terminal. He asked several times whether his luggage would make the flight. The ticket agent told him that if it did not, it would be sent on a flight leaving two hours later. The agent had Johnson complete special luggage forms for people who check their luggage late.

The narcotics officers did not speak to or interfere with Johnson as he boarded his flight. He made his plane, which took off as scheduled at 5:20 p.m. At that point, the officers got permission to go onto the tarmac to see if Johnson's luggage had made the flight; it had not. After they found the luggage, the officers asked an airline representative if they could take it inside. The airline representative allowed them to take the two bags to an American Airlines office, but refused to relinquish custody of the luggage to the Drug Enforcement Agency (DEA) office at the airport. Instead, the representative allowed

the officers, with the airline representative present, to take the luggage to the DEA office at LAX between 6:30 p.m. and 6:45 p.m. The airline maintained custody of the luggage at all times.

The drug sniffing dog arrived at approximately 6:45 p.m. The luggage was taken out of the DEA office and into the hallway, where the sniff test was performed. At approximately 7:00 p.m., the dog indicated the presence of narcotics. At that time, the DEA seized the bags, and the airline representative yielded custody and left the DEA office. All of these events took place prior to the 7:20 p.m. flight on which the luggage would have been placed, had the dog not indicated that narcotics were inside. Based upon the dog's indication, a search warrant was obtained. The luggage was opened pursuant to the warrant, and 2.9 kilograms of cocaine base were found in one of the suitcases.

During the voir dire portion of Johnson's trial, the judge informed the jurors that the parties had a right to unbiased jurors and that jurors should make known any reasons that might disqualify them to act in an unbiased and unprejudiced way. In the context of determining whether jurors had a personal experience that would impair their ability to render impartial judgment, the judge stated:

The court is about to ask certain questions of you, and in this type of case, I must ask questions of you that are not intentionally aimed at embarrassing any of you, but you must understand that in this type of case, we want to give any of you an opportunity to tell us if you see any conflict of interest. And by that, I mean an—and it is a disappointing thing to have to say, but drugs seem to invade all of our lives at one time or another through relatives or friends, and many of our lives are touched by this scourge.

If there are any of you who have had such contact with drugs through either personal experience or through relatives', unfortunately, experience, and if you feel that is going to amount to a conflict of interest in your serving as a juror in this type of case, we want you to tell us so.

Later during voir dire, the judge commented to the jury:

THE COURT: Let's talk about the attitudes. I've talked a little bit about how narcotics is kind of getting out of hand now, and causing quite a problem to the law enforcement people, and is also causing a lot of problems to the victims of this narcotic trafficking, and we have certain laws that have been enacted that proscribe trafficking in narcotics. Those laws say, "Thou shalt not possess narcotics for the purpose of selling it to others." That's the charge in this case.

And if we're called upon to bring about enforcement of those laws, this is one such instance.

Now, are there any of you who feel that there is something wrong about our system of justice, we shouldn't have laws that proscribe the possession of narcotics?

Do any of you say to yourselves, we ought to have a system of laws where a man can do just as he doggone pleases. If he wants to possess narcotics or sell it to others, that's his business. Are there any of you who feel that way?

Are there any of you who say to yourselves there shouldn't be any laws proscribing this kind of conduct, I'm going to write to my Congressman about that? Are you an activist about that? If so raise your hand.

(No Response)

THE COURT: Are there any of you who feel that the laws are not strong enough, that we really ought to take 'em out and string 'em up if—they're caught with narcotics; that there ought to be even tougher laws than there are? Any of you feel that way? Have you written your Congressman to say, Let's go after these guys even in a tougher manner than we have in the past? been an activist, we call it. If so, raise your hands.

(No Response)

THE COURT: I take it then from a lack of any of your raising your hands

that what you're saying to all of us is that I am willing to sit as a juror in this case, objectively, to be guided by the evidence, and to be guided by those laws that we have that pertain to the facts of this case, and to, as best I can, as a trier of fact, to judge the innocence or guilt of this defendant without the passion or prejudice, or bias of any kind. Are all of you able to say that to all of us? Let me hear your answer.

PROSPECTIVE JURORS: Yes.

Two jurors said that they would have trouble being fair because of the effect narcotics had on their lives, and, as a result, were removed for cause.

## II. The Luggage Search.

We review the lawfulness of a search de novo, and the findings of fact made at a suppression hearing for clear error. *United States v. Huffhines*, 967 F.2d 314, 316 (9th Cir.1992).

■ The appellant contends that because his luggage was detained for too long, the cocaine base should have been suppressed under *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The government argues that *Place* is distinguishable, and suppression was properly denied under *United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir.1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 732, 107 L.Ed.2d 750 (1990). We conclude that *Place* is distinguishable, and that this case should be decided similarly to *Brown*.

In *Place*, the airline passenger had arrived at La Guardia Airport. The agents took his luggage away from him and drove it to Kennedy Airport where, about an hour and a half after it had been taken away from the passenger, a dog sniffed it and indicated the presence of narcotics. *Place*, 462 U.S. at 698–699, 103 S.Ct. at 2639–2640. The Supreme Court analyzed the seizure of luggage as analogous to a *Terry* stop of a person and held that the dog-sniffing procedure did not constitute a search within the meaning of the Fourth Amendment. *Id.* at 707, 103 S.Ct. at 2644. Suppression was required because the ninety minute

detention of the luggage went beyond police authority to detain briefly luggage reasonably suspected to contain narcotics. *Id.* at 710, 103 S.Ct. at 2646. We distinguish *Place*, because Johnson's luggage was not taken from him, and his custody of the luggage was not interfered with.

In *Brown*, the passenger had checked his suitcases, which were diverted by narcotics officers before they were loaded onto the airplane. We distinguished *Place*, noting that while taking luggage from a person's custody is a seizure, detaining bags that a traveler has already relinquished to a third party common carrier is not. *Brown*, 884 F.2d at 1311. The appellant correctly points out that in *Brown*, we took note of the brevity of the detention. Brevity, however, must be measured by the practical consequences of delay. In determining that there was no seizure in *Brown* we noted that "the brief detention of the bags would have in no way interfered with his travel, or frustrated his expectations with respect to his luggage." *Id.* Likewise, *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), established that "a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."

Here Johnson's only interest was that the airline, as his bailee, would place his luggage on the next plane, which was to leave about two hours after his plane. The entire process of removing the luggage from the cart, taking it from one office to the other, and having the dog sniff it, was completed prior to the time the luggage would have been placed on the airplane. The airline did not give up custody of the luggage to the narcotics officers until after the dog had indicated the presence of narcotics. The appellant does not claim any constitutional violation on account of the actions of the officers after the dog indicated the presence of narcotics. Because nothing that the officers did interfered with the appellant's possessory interests in his luggage prior to the dog sniffing, there was no seizure of the luggage. *See also*

 

*United States v. England,* 971 F.2d 419, 421 (9th Cir.1992) ("it is the extent of the interference with the defendant's possessory interest in his property ... that determines whether a seizure has occurred").

Because we have determined that there was no seizure in this case, it is unnecessary to reach the issue of whether there was reasonable suspicion for a seizure.

### III. The Trial Judge's Comments.

 The appellant objects to references by the trial judge to drugs as being a "scourge," and to the comment by the judge concerning "how narcotics is getting out of hand," which he reads to imply an improper suggestion of a duty to convict. Because the appellant did not object to the trial judge's comments or move for a mistrial, we review his claim only for plain error. *United States v. Sanchez–Lopez,* 879 F.2d 541, 551 (9th Cir.1989).

We see nothing unfairly prejudicial, and there was certainly no plain error in the trial judge's remarks during the voir dire. Taken in context, they had the obvious effect of making jurors feel comfortable about revealing whether some contact with narcotics had impaired their ability to be impartial. This was protective of the defendant's rights, not prejudicial to them. Referring to a widespread and serious criminal problem as a scourge was not a biased comment, because it carried no implication that the defendant was a criminal, and the judge clearly instructed the jury that the determination of guilt was theirs to make, based upon the evidence, and subject to the appropriate requirements of proof. At the end of the trial, he gave the usual instruction that "you must not read into ... anything I may have said or done, or any suggestion as to what verdict you should return. That is a matter entirely up to you." Further, no claim is made of inadequacy in the judge's instructions on the presumption of innocence, burden of proof, and standard of proof.

 The defendant's entitlement to jurors impartial on the question of whether he committed the crimes charged is entirely distinct from the question of whether the crime itself is one which arouses their moral passions. He is not entitled to demand a jury impartial to the underlying crime itself.

AFFIRMED.