916 P.2d 1114

**STATE of Arizona, Appellant,**

v.

**Edison MILLAN, Appellee.**

**No. 1 CA–CR 94–0478.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 21, 1995.

As Corrected Dec. 4, 1995 and Jan. 8, 1996.

Review Denied May 21, 1996.

---

Richard M. Romley, Maricopa County Attorney by Diane E.W. Gunnels, Deputy County Attorney, Phoenix, for Appellant.

Neal W. Bassett, Eleanor L. Miller, Phoenix, for Appellee.

## OPINION

VOSS, Judge.

The state appeals from the trial court's order granting the motion to suppress evidence and statements filed by Edison Millan (defendant). We reverse and remand.

### FACTS AND PROCEDURAL BACKGROUND

Defendant and a co-defendant, Zusana Singh (Singh), were each indicted on one count of transportation of marijuana for sale having a weight of more than two pounds, a class 2 felony, and one count of possession for sale of marijuana having a weight of more than four pounds, a class 2 felony. Singh was also indicted for possession of marijuana, a class 6 felony. Defendant filed a motion to suppress evidence and statements. Following an evidentiary hearing, the court granted the motion and the state moved to dismiss the indictment without prejudice.

The evidentiary hearing revealed the following facts. On January 12, 1994, three police officers with the Commercial Interdiction Unit of the Drug Enforcement Bureau of the Phoenix Police Department were on duty at Sky Harbor Airport. Sometime after 10:00 p.m., Officers DeLeon and Hopper observed an airport shuttle arrive from Tucson. The driver stopped and removed several bags. Two individuals, later identified as defendant and Singh, claimed four pieces of luggage: a black nylon bag with a blue stripe, a black nylon bag, a blue plastic or vinyl bag, and a Samsonite hard-sided suitcase. Defendant and Singh took them to the skycap to be checked curbside. After Singh filled out identification tags and placed them on the luggage, defendant and Singh left and entered the airport lobby.

Both Officers DeLeon and Hopper stated they had a hunch about the contents of this luggage because defendant and Singh had arrived in a van from Tucson, a source city for drugs, they looked out of place, and Singh had filled out identification tags at the Phoe-

nix airport. The officers testified that such activities could be indicators that defendant and Singh were drug couriers.

Officer Hopper signalled to the skycap to hold the bags at the counter for further inspection. The officers observed that the luggage showed a destination of New York City, a demand city for drugs. The officers also observed that one tag had the name "Tony Vega" written on it, while the other said "Tony Vega, Brooklyn, New York." The destination and the incomplete name tags were further indicators to the officers that defendant and Singh may have been transporting illegal drugs. Officer Hopper proceeded to feel the bags by compressing the sides with his hands. Hopper did not feel anything unusual in the nylon and plastic bags, but felt a large block of material when he tried to compress the sides of the gray Samsonite suitcase. Based upon his training and experience, he believed this bag contained a bale of marijuana.

Officer Eggert felt the luggage in the same manner. When he squeezed the gray Samsonite suitcase, he also concluded, based upon his training and experience, that it contained marijuana. Officer Eggert testified that he was confident he had felt a bale of marijuana.

Officer DeLeon is a certified narcotics detection dog handler. He and his dog, Crackers, are certified as a team to detect heroin, cocaine, and marijuana. As a result of the squeezes by Officers Hopper and Eggert, Officer DeLeon brought Crackers to the four suitcases. The dog alerted to the black nylon bag with the blue stripe and blue plastic or vinyl bag, but did not alert to the black nylon bag or to the gray Samsonite bag, which the officers believed contained marijuana.

Officers DeLeon and Eggert located defendant in the airport lobby. Officer DeLeon identified himself, told defendant he was not under arrest, he was free to leave, and asked if he would talk to him. Defendant agreed. Officer DeLeon asked defendant his name. Defendant responded, "Tony Vega." He showed the officer his airline ticket which was issued in the name of Tony Vega and which the officer observed to be a one-way

ticket paid for in cash. However, when the officer requested identification, defendant said he was not Tony Vega and produced identification with his real name. When asked if he had checked any bags, defendant said he had. He told the officer the gray Samsonite suitcase did not belong to him, but to a Tony Vega who lived in Tucson and had asked defendant to transport the bag to New York. Officer DeLeon then asked defendant if he would consent to have his bags searched. Defendant consented.

Officer Eggert approached Singh and asked her similar questions about the luggage. She told him the gray Samsonite suitcase belonged to "Eddie." She also gave the officers permission to search her bags. The officers opened and searched the bags. The officers found a bale of marijuana in the gray Samsonite suitcase. Skirts in plastic bags were wrapped around the edges of the suitcase to cover the smell of marijuana. No drugs were found in the other suitcases. However, a small amount of marijuana was found in a baggie in one of Singh's carry-on bags. Defendant and Singh were arrested.

In his motion to suppress, defendant argued that the police conduct in detaining and squeezing his luggage was an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and article 2, section 8 of the Arizona Constitution, and that the subsequent consent was invalid as "fruit of the poisonous tree."

In granting the motion to suppress, the court found that police may not even briefly detain and palpate luggage to determine its contents without reasonable suspicion. The court found that because the luggage was detained and palpated solely on a hunch, no reasonable suspicion existed. The court distinguished the cases of *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), which held that a canine sniff of luggage in a public place does not constitute a search under the Fourth Amendment to the Constitution, and *State v. Houpt*, 169 Ariz. 550, 821 P.2d 211 (App.1991), which held that reasonable suspicion is not required to permit a narcotics dog to sniff luggage.

The court found that the actions of the police in squeezing and feeling the luggage were more "intrusive and indiscriminate" than a canine-sniff. The court also found that because the initial seizure was invalid, the subsequent consent was also invalid because the seizure and the consent were not sufficiently attenuated. We find clear and manifest error in this ruling and, therefore, reverse. *State v. Oliver*, 169 Ariz. 589, 593, 821 P.2d 250, 254 (App.1991).

## DISCUSSION

 Whether police conduct constitutes a seizure turns on the "extent of the interference with the defendant's possessory interest in his property." *United States v. England*, 971 F.2d 419, 420 (9th Cir.1992). For a seizure to occur there must be "some meaningful interference" with defendant's possessory property interest. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). To claim protection under the Fourth Amendment, a defendant must have a legitimate expectation of privacy in the invaded place. *Minnesota v. Olson*, 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85 (1990) (quoting *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). A search occurs when that expectation is infringed upon. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656.

 Adopting the reasoning in *United States v. Lovell*, 849 F.2d 910 (5th Cir.1988), this court held recently that when a government agent briefly detains a suitcase after it has been relinquished into the custody of airline personnel and squeezes the suitcase to facilitate smelling its contents, either by a narcotics detection dog or by the agents themselves, there is no Fourth Amendment violation. In reaching this conclusion, the court specifically found that such a procedure does not interfere meaningfully with a defendant's possessory interest in the luggage and does not invade a reasonable expectation of privacy. *State v. Killean*, 184 Ariz. 164, 170–71, 907 P.2d 550, 555–56 (App.1995). Under these circumstances, neither a search nor a seizure has occurred and reasonable suspicion by a government agent of criminal activity is not required. *See United States v. Johnson*, 990 F.2d 1129, 1132–33 (9th Cir. 1993); *United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir.1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 732, 107 L.Ed.2d 750 (1990); *United States v. Garcia*, 849 F.2d 917, 919 (5th Cir.1988); *United States v. Beale*, 736 F.2d 1289, 1292 (9th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *United States v. Viera*, 644 F.2d 509, 510–11 (5th Cir.), *cert. denied*, 454 U.S. 867, 102 S.Ct. 332, 70 L.Ed.2d 169 (1981).[1] The facts of this case are essentially those found in *Killean*.

Defendant argues, however, and the trial court agreed, that palpating the luggage to determine its contents was more intrusive and indiscriminate than prepping the suitcase for sniffing by a dog or human and that the "sniff and squeeze" cases, such as *Lovell*, therefore, did not apply. The court reasoned that a sniff is limited both as to manner and content of information obtained, while feeling a suitcase can reveal non-contraband contents and lead tó embarrassment and inconvenience to the owner. We find this distinction unpersuasive.

 Assuming that the squeezing process is neither violent nor extreme, we do not see that the intrusion involved in squeezing and feeling a suitcase is any less reasonable than the intrusion involved in squeezing and sniffing the suitcase.[2] *See Killean*, 184 Ariz. at 170–71, 907 P.2d at 555–56. As stated in *United States v. Bronstein*, 521 F.2d 459 (2d Cir.1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976):

> [O]ne who consigns luggage to the common baggage area of a public carrier, airport or

---

1. Removal of luggage directly from the possession of the traveller or its detention for an unreasonable length of time has been found to constitute a seizure because it meaningfully interferes with possessory rights in one's property. *Place*, 462 U.S. at 708, 103 S.Ct. at 2645; *United States v. Puglisi*, 723 F.2d 779, 787 (11th Cir.1984).

2. As noted in *Lovell:* "While we could hypothesize a 'prepping' process so violent, extreme and unreasonable in its execution as to cross the bounds of constitutional propriety, we are not confronted by such a process here." 849 F.2d at 913.

similar facility cannot expect to enjoy as much privacy with respect to the bag as he would with respect to his person or property carried by him personally into, on or from the carrier or facility. It is common knowledge that luggage turned over to a public carrier will be handled by many persons who, although not permitted to open it without the owner's permission, may feel it, weigh it, check its locks, straps and seams to ensure that it will not fall apart in transit, and shake it to determine whether the contents are fragile or dangerous.

*Id.* at 465 (Mansfield, J., concurring) (citation omitted); *see also United States v. McDonald,* 855 F.Supp. 267, 269 (S.D.Ind.1994) (where police officer boarded bus and manipulated the sides of bags in overhead compartment and was able to feel brick-like objects believed to be contraband, the rubbing, squeezing, and manipulating of the exterior of defendant's luggage did not constitute an unreasonable search or seizure); *United States v. Muniz–Melchor,* 894 F.2d 1430, 1435 (5th Cir.), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990) (where government agent tapped exterior of propane tank in bed of defendant's truck to determine its contents, agent's tapping not a search under rationale of *Lovell* because defendant must have reasonably expected someone might lean against tank or touch it in some manner).

■ Defendant argues further, however, that the actions of the police are prohibited under the limitations expressed in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), which recognized the "plain-feel" doctrine in the context of a *Terry* [3] stop. In discussing "tactile discoveries of contraband," the court held that if a police officer lawfully pats down a suspect and feels an object which is apparent as contraband, "its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context."

**3.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**4.** Under the plain-view doctrine, the state must prove (1) that the police were lawfully positioned

*Id.* at 375, 113 S.Ct. at 2137.[4] However, defendant has not cited any authority nor have we found any which has applied the principles established in *Dickerson* in this context. *Dickerson* involved police intrusions upon the person during a pat-down search while this case involves intrusions upon personal property relinquished to the possession of a third person in a public place. The former implicates privacy rights that the latter does not.

We also reject defendant's argument that *State v. Randall,* 116 Ariz. 371, 569 P.2d 313 (App.1977), supports his argument. In light of *Lovell* and *Houpt,* the continued viability of *Randall* is in doubt. *See Killean,* 184 Ariz. at 170–71, 907 P.2d at 555–56.

Finally, we reject defendant's argument that even if the officers' actions are permitted under the Fourth Amendment, they would be prohibited under article 2, section 8 of the Arizona Constitution. Because we hold that under the facts of this case defendant had no reasonable expectation of privacy in luggage relinquished to airline personnel, neither the Fourth Amendment to the United States Constitution nor article 2, section 8 of the Arizona Constitution is implicated in this case.

■ Having concluded that the detention and squeezing of defendant's luggage in this case did not constitute either a search or a seizure of defendant's luggage, we need not reach the question of whether the subsequent consent to search the luggage was tainted by the alleged illegal conduct of the police. Defendant does not argue that the consent was otherwise invalid. Further, the facts of this case clearly show that the encounter between defendant and the police was consensual and that defendant's detention did not amount to a seizure. *See Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

to view the object; (2) that its incriminating character is immediately apparent; and (3) that the officers had a lawful right of access to the object. *Dickerson,* 508 U.S. at 373–76, 113 S.Ct. at 2136–2137.

## CONCLUSION

Because we have determined that the police conduct did not implicate the Fourth Amendment, we find the trial court erred in granting defendant's motion to suppress. We, therefore, reverse the ruling of the trial court and remand this case for further proceedings consistent with this decision.

FIDEL and TOCI, JJ., concur.