941 P.2d 228

STATE of Arizona, Appellant,

v.

Kim Richard PETERS, Appellee.

No. CR–96–0514–PR.

Supreme Court of Arizona,
En Banc.

June 26, 1997.

Richard M. Romley, Maricopa County Attorney, by Gerald R. Grant, Kevin E. Mann, Phoenix, for State of Arizona.

Sherick Law Office by Steven P. Sherick, Brian I. Rademacher, Tucson, for Kim Richard Peters.

## OPINION

FELDMAN, Justice.

Marijuana was discovered in Kim Peters' luggage during an airport search in Phoenix. Relying on *State v. Randall*, 116 Ariz. 371, 569 P.2d 313 (App.1977), the trial judge suppressed the evidence. The court of appeals reversed. *State v. Peters*, No. 1 CA–CR 95–0171 (Ariz. Ct.App. filed May 21, 1996) (memorandum decision). We granted review to examine the continuing validity of *Randall*, which holds that the brief detention of luggage after it is checked with airline personnel, together with the act of squeezing the luggage to feel or smell its contents, violates the owner's Fourth Amendment rights. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and Rule 31.19, Ariz.R.Crim.P.

## FACTS AND PROCEDURAL HISTORY

On August 1, 1994, Officer Swafford saw Kim Richard Peters (Defendant) get out of a car parked at the curb of Phoenix Sky Harbor Airport's Terminal Three. Swafford watched as Defendant checked three large, hard-sided suitcases for a 3:50 p.m. flight to Dallas/Ft. Worth and Jacksonville, Florida. After Defendant proceeded to the gate, Swafford went to the baggage area, located Defendant's bags, and examined them by squeezing their sides. As he did so, he smelled a strong, sweet odor emanating from each one. Knowing that masking agents such as fabric softener are commonly used to disguise the smell of drugs, Swafford then placed each suitcase on its side and pressed down. Inside each suitcase he felt a hard, solid mass.

While Swafford was examining the bags, the baggage handlers informed him that if he wanted to get the bags on the flight he still had time to do so. On completing this examination, Swafford called his partner, Officer Hopper, who also squeezed, smelled, and felt the bags and the hard objects within. Hopper then took the bags to an airport security office while Swafford went to the departure gate in search of Defendant.

At the gate, Swafford boarded the airplane and asked Defendant to get off so they could speak. Defendant agreed and left the airplane, which then departed. Swafford arrested Defendant and escorted him to the airport security office where Officer Galbari, after examining the bags, requested a search warrant.

The warrant affidavit set forth as supporting facts that (1) Defendant was traveling from a drug source city to a demand city, (2) he arrived only ten minutes before the flight's scheduled departure, (3) he was carrying new luggage, (4) he had no personal tags on the bags, only the tags with his name that were placed by the airline, (5) facts # 2, # 3, and # 4 are common for drug couriers, (6) a sweet smell of fabric softener came from the bags, and (7) Officer Galbari smelled marijuana when she squeezed the sides of the bags. After obtaining the search warrant, the officers opened the bags and found over sixty pounds of marijuana.

Defendant was charged with transportation of marijuana for sale greater than two pounds and possession of marijuana for sale greater than two pounds, both class 2 felonies. At the hearing on Defendant's motion to suppress the marijuana, Officer Galbari testified that traffickers often pack bales of marijuana in large, new suitcases without identification tags, or with illegible or incomplete tags. In addition, they often use a masking agent, such as dryer sheets, baby powder, pepper, or coffee. When officers observe luggage with such characteristics, they will generally investigate further by lifting the bag to see if it is excessively heavy or squeezing the bag in an attempt to expel some of the inside air. If they detect a noticeable, distinctive odor, they will also feel for a solid mass. If there is little or no give in the bag, in Galbari's experience this means a bale of marijuana is inside.

In evaluating possible drug couriers, Swafford testified that he considered the amount of luggage, lateness of arrival, level of nervousness, destination, and any odor emanating from a bag. He stated that had nothing been suspicious after he and Hopper examined Defendant's bags, the bags could have made the flight.

In granting Defendant's motion to suppress, the trial judge relied on *Randall* and Justice Brennan's concurring opinion in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). *Randall* held that squeezing and sniffing luggage checked and about to be loaded on a departing flight was a search because it was "an intrusion into a protected area." 116 Ariz. at 373, 569 P.2d at 315. In the present case, the court of appeals reversed, holding:

> [T]he police may briefly detain and palpate luggage to determine its contents without reasonable suspicion and ... such detention does not constitute a seizure.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> [T]he squeezing of the bags to smell the air surrounding the bags or to feel the contents did not constitute a search which invaded an area in which the defendant [had] a legitimate expectation of privacy.

*Peters*, mem. dec. at 7–9. The court further found that the judge based his ruling on incorrect legal standards set forth in *Randall*. We agree and now approve the court of appeals' decision and disapprove *Randall* in part.

## DISCUSSION

■ We review a trial court's factual findings on a motion to suppress under an abuse of discretion standard. However, a suppression order based on an incorrect legal standard may be reversed. *State v. Fodor*, 179 Ariz. 442, 448, 880 P.2d 662, 668 (App.1994).

### A. Seizure

■ The Fourth Amendment protects persons against unreasonable searches and seizures. A seizure occurs when a government agent makes some meaningful interference with an individual's possessory interest in property. *See United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). In determining whether there has been a seizure, courts balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion. *Place*, 462 U.S. at 703, 103 S.Ct. at 2642. If the intrusion is very limited and the government's interest is very compelling, the Fourth Amendment is not violated when personal property is briefly detained and examined. *See id.* In *Place*, the United States Supreme Court held that luggage was not searched by mere exposure to a dog sniff in a public place, but that taking luggage from

one's personal custody was a seizure subject to *Terry* stop limitations. *Id.* at 708–09, 103 S.Ct. at 2645. The officers meaningfully interfered with Place's possessory interests when they took his luggage, held it for ninety minutes while examining it, and failed to tell Place its location and how to regain possession. As a result, the seizure was unreasonable. *Id.* at 710, 103 S.Ct. at 2646.

Other cases, however, have distinguished between removing property from one's personal possession and examining it while it is in an airline's custody. These cases hold that when luggage is entrusted to an airline, it is not seized by a subsequent examination that neither interferes with nor frustrates the owner's travels. *See, e.g., United States v. Johnson,* 990 F.2d 1129, 1132 (9th Cir. 1993); *United States v. Brown,* 884 F.2d 1309, 1311 (9th Cir.1989), *cert. denied,* 493 U.S. 1025, 110 S.Ct. 732, 107 L.Ed.2d 750 (1990); *United States v. Lovell,* 849 F.2d 910, 916 (5th Cir.1988).

The *Johnson* case is a good example. Johnson arrived at the airport five minutes before his flight and airline employees informed him his bags might have to be placed on the next flight, two hours later. 990 F.2d at 1130. Two narcotics officers observed that Johnson paid cash for his one-way ticket and appeared nervous. *Id.* When the officers discovered the bags were indeed left behind, the airline retained custody of the bags but permitted the officers to arrange for a dog sniff. *Id.* at 1130–31. The sniff took place more than ninety minutes after Johnson's flight departed but before the flight scheduled to carry his luggage departed, so there was no interference with Johnson's travel arrangements. *Id.* at 1131. The Ninth Circuit held that "[b]ecause nothing that the officers did interfered with [Johnson's] possessory interests in his luggage prior to the dog sniffing, there was no seizure of the luggage." *Id.* at 1132.

Our court of appeals found no Fourth Amendment violation in a case that cannot be reconciled with *Randall.* In *State v. Millan,* Millan and a codefendant checked four pieces of luggage; on a hunch, officers instructed the sky cap to hold the luggage for examination. 185 Ariz. 398, 399–400, 916 P.2d 1114, 1115–16 (App.1995). The examination was quite similar to that made in the present case. The officers then approached the defendants and, after questioning, received permission to search the bags. A bale of marijuana was found in one of them. *Id.*

In his motion to suppress, Millan argued that detaining and squeezing the luggage was a seizure violating the Fourth Amendment. *Id.* The trial court granted the motion, holding that police may not even briefly detain and squeeze luggage to determine its contents without reasonable suspicion. The court of appeals reversed, holding:

> [W]hen a government agent briefly detains a suitcase after it has been relinquished into the custody of airline personnel and squeezes the suitcase to facilitate smelling its contents, either by a narcotics detection dog or by the agents themselves, there is no Fourth Amendment violation.... [S]uch a procedure does not interfere meaningfully with a defendant's possessory interest in the luggage and does not invade a reasonable expectation of privacy.... Under these circumstances, neither a search nor a seizure has occurred and reasonable suspicion by a government agent of criminal activity is not required.

*Id.* at 401, 916 P.2d at 1117 (citations omitted).

Given modern conditions, we believe this view correctly states the law. The world has changed in the twenty years since *Randall* was decided. Today police, airport security personnel, and travelers must all be concerned not only that drugs may be transported but that explosives, incendiary devices, and other items that threaten the safety of those on the airplane may be stored in luggage in the airplane's baggage compartment. Travelers today expect and want luggage X-rayed, sniffed, felt, and handled in a manner that is as non-intrusive as possible but consistent with ensuring that the checked luggage does not contain items that threaten their safety. Brief, non-intrusive detention of checked luggage for such examination no longer invades the traveler's reasonable expectation of privacy, does not unduly interfere with possessory rights, and is not a seizure under the Fourth Amendment. Inso-

far as it holds to the contrary, *Randall* is disapproved. In reaching this conclusion we do not, of course, authorize detention or examination methods that unreasonably delay the traveler or result in the traveler or his luggage missing the flight. In short, warrantless detention for examination without reasonable suspicion is not a seizure and is permissible if made in such a manner that neither the traveler nor his luggage is unreasonably delayed.

■ In the case before us, Defendant relinquished control of his bags to airline personnel before the officers detained the bags. As Officer Swafford examined the bags, the baggage handlers informed him the flight was delayed and he still had time to get the bags on the flight if he wished to do so. Thus, because the bags could have made Defendant's flight, the brief detention would not have interfered with Defendant's expectation that the airline would transport his bags to his destination. We therefore conclude that no seizure occurred.

## B. Search

■ Nor do we believe the officers' actions constituted an unreasonable search. In *State v. Houpt,* the court of appeals recognized that officers

> may use a narcotics detection dog, *or other techniques,* to examine a suitcase while it is being held by airline personnel so long as that examination does not meaningfully interfere with defendant's possessory interest.

169 Ariz. 550, 551, 821 P.2d 211, 212 (App. 1991) (emphasis added). An agent's squeeze and subsequent sniff of a checked bag is not an illegal search. *Lovell,* 849 F.2d at 913; *United States v. Viera,* 644 F.2d 509 (5th Cir.1981), *cert. denied,* 454 U.S. 867, 102 S.Ct. 332, 70 L.Ed.2d 169 (1981). As was noted in *Millan:*

> [O]ne who consigns luggage to the common baggage area of a public carrier, airport or similar facility cannot expect to enjoy as much privacy with respect to the bag as he would with respect to his person or property carried by him personally into, on or from the carrier or facility. It is common knowledge that luggage turned over to a public carrier will be handled by many persons who, although not permitted to open it without the owner's permission, may feel it, weigh it, check its locks, straps and seams to ensure that it will not fall apart in transit, and shake it to determine whether the contents are fragile or dangerous.

185 Ariz. at 402, 916 P.2d at 1118 (quoting *United States v. Bronstein,* 521 F.2d 459 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976)(Mansfield, J., concurring)). Thus,

> [a]ssuming that the squeezing process is neither violent nor extreme, we do not see that the intrusion involved in squeezing and feeling a suitcase is any less reasonable than the intrusion involved in squeezing and sniffing the suitcase.

*Id.* at 401, 916 P.2d at 1117.

Again, having in mind the problems of terrorism and sabotage, as well as the drug trade, we hold that although Defendant had an expectation of privacy in the contents of his luggage, that expectation was not compromised by a squeeze or sniff of the exterior of each suitcase. Neither sniff nor squeeze was an unreasonable search. *See Chandler v. Miller,* — U.S. —, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) ("[W]here the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable'—for example, searches now routine at airports and at entrances to courts and other official buildings."). In so holding, we disapprove *Randall* on the search point also.

## CONCLUSION

For all of the above reasons, we approve the court of appeals' decision, vacate the trial court's order granting Defendant's motion to suppress, and remand to the trial court for further proceedings consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and MOELLER and MARTONE, JJ., concur.