James Andrew KJOLHEDE, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–06–01361–CR.

Court of Appeals of Texas,
Dallas.

July 15, 2009.

Discretionary Review Refused
Nov. 18, 2009.

Michael P. Gibson, Burleson Pate & Gibson, LLP, Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Anne Wetherholt, Asst. Dist. Atty., Dallas, for State.

Before Justices MORRIS, WRIGHT, and BRIDGES.

## OPINION

Opinion By Justice MORRIS.

A random search of James Andrew Kjolhede's checked suitcase at DFW Airport uncovered a vial of cocaine. After challenging the search in a pretrial hearing, appellant pleaded guilty to the offense of possession of cocaine. He now complains in two issues that the trial court erred in determining he did not have standing to contest the search of his bag and in denying his motion to suppress the results of the search. Concluding the trial court correctly determined appellant did not have standing to contest the search, we affirm the trial court's judgment.

### I.

On the date of his arrest, appellant presented his red Samsonite suitcase at DFW Airport curbside check-in for a flight to Hawaii. After the suitcase was checked in, it was randomly selected to be fully searched for items that could be potentially dangerous to the public. It was not put through a magnetometer or swabbed for the presence of nitrates before the search. A Transportation Security Administration officer opened the suitcase and unzipped a Dopp kit inside. In the Dopp kit, the TSA officer found a brown vial containing white powder. He contacted a supervisor, who examined the vial. The supervisor then contacted DFW police. A DFW police officer collected the vial.

Another DFW police officer paged appellant to come to the baggage check-in area. When he got there, appellant admitted the suitcase and the vial belonged to him. When asked what was inside the vial, appellant admitted it was cocaine. He was then arrested at the airport. Later testing of the powder confirmed it was cocaine.

### II.

In his first issue, appellant claims the trial court erred in determining he did not have standing to complain about the search in a motion to suppress. A defendant possesses standing to challenge a search only when that defendant has a legally protected right to the expectation of privacy. See Parker v. State, 182 S.W.3d 923, 925 (Tex.Crim.App.2006). To determine whether a defendant has a reasonable expectation of privacy in an item searched by the government, we use a two-pronged method. First, we ask whether the defendant had a subjective expectation of privacy in the item searched. If the answer is yes, we then ask whether the defendant's expectation of privacy is one that society recognizes as objectively reasonable or justifiable under the circumstances. See id. at 925–26 (citing Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

To ascertain whether the defendant's claim of privacy is objectively reasonable we consider: (1) whether the defendant had a property or possessory interest in the item invaded; (2) whether he legitimately possessed the item; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the item to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. See Smith v. State, 176 S.W.3d 907, 913 (Tex.App.-Dallas 2005, pet.

ref'd). None of the factors is dispositive; instead, we examine the circumstances surrounding the search in their totality. *Id.*

Here, appellant had a possessory interest in his own suitcase. But he had surrendered the bag to the TSA for screening. The TSA officer who first discovered the cocaine testified that the airport has multiple signs warning passengers that they need to be available to unlock their baggage if they want to travel with locked bags. And even before the attacks of September 11, 2001, courts had noted that a person who "consigns luggage to the common baggage area of [an] ... airport ... cannot expect to enjoy as much privacy with respect to the bag as he would with respect to his person or property carried by him personally." *See State v. Millan,* 185 Ariz. 398, 916 P.2d 1114, 1117–18 (1995) (quoting *United States v. Bronstein,* 521 F.2d 459, 465 (2d Cir.1975) (Mansfield, J., concurring)). We must weigh appellant's privacy claim against society's need for government screening of air traffic baggage through the use of random searches. *See United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (holding "a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment").

Airport screening procedures are conducted for two primary reasons: to prevent passengers from carrying weapons or explosives onto the aircraft and to deter passengers from attempting to do so. *See United States v. Marquez,* 410 F.3d 612, 617 (9th Cir.2005). In the wake of the September 11, 2001 attacks, Congress passed the Aviation and Transportation Security Act establishing the TSA and its authority to oversee security at airports throughout the United States. *See Turner v. State,* 132 S.W.3d 504, 507 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd); *see*

*also* 49 U.S.C.A. § 114 (West 2007). In relevant part, the legislation provides for the "screening of all passengers and property, including ... carry-on and checked baggage ... that will be carried aboard a passenger aircraft operated by an air carrier ... in air transportation or intrastate air transportation." 49 U.S.C.A. § 44901(a) (West 2007).

As has been noted, more than 700 million passengers fly on commercial aircraft in the United States each year and the TSA is responsible for ensuring those passengers' safety, the safety of the airline and airport personnel, and—as the events of September 11, 2001 demonstrated—the safety of the general public against risks arising from commercial airplane flights. *United States v. Aukai,* 497 F.3d 955, 956 (9th Cir.2007). Most courts recognize that the search procedures mandated by the TSA have every indicia of being the most efficacious that could be used. *See United States v. Hartwell,* 296 F.Supp.2d 596, 602 (E.D.Pa.2003), *aff'd,* 436 F.3d 174 (3d Cir. 2006).

We agree with the assessment of the Houston Court of Appeals in *Turner* that the federal legislation authorizing the TSA to screen both passengers and luggage "provides some indication that society recognizes that *all* passengers boarding aircraft in the United States are subject to a search of themselves and *all* property that they attempt to bring aboard the aircraft, regardless of the location of the airport or the destination of the flight." *See Turner,* 132 S.W.3d at 507 (emphasis in original). Random full searches of airline passengers' luggage help prevent acts of terrorism as well as deter future terroristic acts with minimal intrusion on or embarrassment to the passengers. Any subjective belief a person might have that his baggage checked for transport aboard a passenger aircraft may not be searched

"makes little sense in a post–9/11 world." *See Aukai,* 497 F.3d at 960. We conclude appellant's subjective claim of privacy in his bag checked for airline travel is not one that society recognizes as objectively reasonable. Appellant did not have standing to challenge the search of his suitcase. We therefore resolve his first issue against him.

Because we have determined that appellant did not have standing to challenge the search of his suitcase, we need not address his second issue complaining of the trial court's denial of his motion to suppress the evidence resulting from the search. We affirm the trial court's judgment.