**Donald ADAMS, a/k/a Whiteboy,
Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 6–92–098–CR.**

Court of Appeals of Texas,
Texarkana.

Nov. 10, 1992.

Discretionary Review Refused
March 3, 1993.

Alexander Bunin, Houston, for appellant.

John B. Holmes, Dist. Atty., Houston,
for appellee.

Before CORNELIUS, C.J., and BLEIL
and GRANT, JJ.

## OPINION

GRANT, Justice.

Donald Adams a/k/a Whiteboy appeals
from a conviction for the murder of Mervin
Mosley. A jury found Adams guilty and
sentenced him to twenty years' imprison-
ment. The trial judge entered in the judg-
ment an affirmative finding of use of a
deadly weapon.

Adams's sole contention on appeal is that
the trial court erred in entering the finding
of use of a deadly weapon in the judgment.
We will reform the judgment of the trial
court by deleting the affirmative finding of
use of a deadly weapon.

In February of 1991, Adams was em-
ployed to drive Manuel Shepard around
while Shepard conducted his drug business.
Adams lost this job after an argument with
Shepard.

On March 10, 1991, Adams and two asso-
ciates, known as Michael and Cedric, en-
tered a house in which Shepard, Mosley,
William Abel, and Mary Harrison were
sleeping. Adams had with him a semiauto-
matic pistol which held eight rounds of
ammunition, and Cedric carried an auto-
matic weapon described as an "Uzi." Both
weapons used .22 caliber bullets.

The occupants of the house were awak-
ened by the sound of gunshots. One of the
men who had entered announced that it
was a robbery and told the occupants to
get face down on the floor. Adams de-
manded drugs and money from Shepard,
and Shepard handed over his money.
Adams then turned to Mosley and demand-
ed to know where there was more money.
When Mosley refused to tell him, Adams
threatened to kill Mosley. Shepard then
said that the money was in the trunk of his
car. Adams told Shepard not to lie and
fired the pistol into Shepard's neck.
Adams then said, "kill everybody in the
house," and about a minute's worth of gun-
fire ensued.

An officer testified that she collected for-
ty-eight spent .22 caliber shells at the crime

scene. A firearms examiner testified that forty-five of the shells came from one gun and three from another. An assistant medical examiner testified that Mosley received two gunshot wounds in the back and that one of these was fatal. Both of the bullets shot into Mosley were .22 caliber. Billy Abel was also killed; he received thirteen gunshot wounds, all from .22 caliber bullets. Shepard was injured but survived.

Adams gave a written statement in which he admitted going to the house with a .22 caliber pistol. He further stated that he took money from Shepard and that while he was distracted, Shepard grabbed for his gun and it accidentally discharged. Cedric then began shooting the "Uzi," and Adams says that he (Adams) ran outside.

The State indicted Adams for the murder of Mosley. Both paragraphs of the indictment claim that Adams caused the death of Mosley by "SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM." After all the evidence was presented, the jury was instructed on the law of parties. The jury found Adams "guilty of murder, as charged in the indictment," and sentenced him to twenty years' imprisonment.

■ Adams's sole point of error is that the trial court erred in entering in the judgment an affirmative finding of use of a deadly weapon. The importance of an affirmative finding that Adams used a deadly weapon stems from a limitation on eligibility for parole contained in TEX.CODE CRIM. PROC.ANN. art. 42.18, § 8(b)(3) (Vernon Supp.1992). That provision states, in part by reference to TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.1992),[1] that if a judgment imposing sentence for certain offenses, including murder, contains an affirmative finding that the defendant used or exhibited a deadly weapon in committing the offense, "he is not eligible for release on parole until his actual calendar time served, without consideration of

good conduct time, equals one-fourth of the maximum sentence or 15 calendar years, whichever is less."

Adams contends that the issue is closed against the State because of the case of *Travelstead v. State*, 693 S.W.2d 400 (Tex. Crim.App.1985). In *Travelstead* the Court said that a trial court should not enter in the judgment a finding that the defendant used a deadly weapon in committing an offense when the jury is the trier of fact, the jury has been instructed on the law of parties, and the jury itself has not made an affirmative finding as to the use of a deadly weapon. *Id.* at 401–02.

In *Travelstead*, the defendant, Travelstead, plotted with a friend to kill Travelstead's stepfather. Travelstead not only loaded the weapon for his friend, but he also encouraged the triggerman at the scene of the crime. The trial judge instructed the jury on the law of parties, but he failed to provide a special issue regarding an affirmative finding of use or exhibition of a deadly weapon. After the jury assessed Travelstead's punishment, the trial court added to the judgment the phrase, "The Court makes an affirmative finding that a deadly weapon was used." *Id.* at 401.

In reforming the judgment by deleting the affirmative finding of use of a deadly weapon, the Court of Criminal Appeals said:

> When a defendant is a party, as defined in Sections 7.01 and 7.02 of the Penal Code, to the use or exhibition of a deadly weapon, *there must be a specific finding by the trier of facts that the defendant himself used or exhibited the deadly weapon.* The power of the trial court to make an affirmative finding should only be invoked if he is the trier of facts.

(Emphasis added.) *Id.* at 402.

Unlike the *Travelstead* case, there is evidence in the present case that Adams did

---

1. For later cases, *Mejia v. State*, 807 S.W.2d 354 (Tex.App.–Houston [1st Dist.] 1991, pet. ref'd), will be less important because the Legislature has amended Article 42.12, § 3g(a)(2), which explains when a trial court should enter an affirmative finding of a deadly weapon in the judgment. That provision now includes a situa-

tion in which a defendant was a party to the offense charged and "knew that a deadly weapon would be used or exhibited" during the commission of the crime. This amendment does not apply in this case, however, because the crime was committed before the effective date of the amendment (September 1, 1991).

exhibit and use a deadly weapon during the commission of the offense. On the basis of this distinction, the State contends that *Travelstead* does not apply because the jury found Adams guilty as charged in the indictment, and the indictment charges him with the use of a deadly weapon, the law of parties notwithstanding. This ignores the application of the law of parties. Adams's conviction for killing Mosley by shooting him with a deadly weapon is as a party only. He was not additionally charged with carrying or having a deadly weapon, and the jury made no finding in its verdict that he used or exhibited one during the commission of the crime. He would have been guilty as a party whether or not he used or exhibited a gun during the commission of the crime. The verdict does not include an affirmative finding that the defendant used a deadly weapon, and any affirmative finding in the judgment to that effect is inappropriate. The trial judge may not usurp the fact-finding province of the jury. *Travelstead*, 693 S.W.2d at 402.

■ The case of *Mejia v. State*, 807 S.W.2d 354 (Tex.App.–Houston [1st Dist.] 1991, pet. ref'd), demonstrates that a defendant who has been convicted as a party can be held to have used or exhibited a deadly weapon if that use or exhibition facilitates the commission of the crime. However, *Mejia* differs from the present case because the judge as the trier of fact made an affirmative finding of use of a deadly weapon after the verdict was reached. The jury as fact finder in the present case made no such finding, and the trial judge may not find such a fact when he or she is not the fact finder.

The State cites three cases in which courts of appeals have found that when the jury finds the defendant guilty as charged in the indictment and the indictment alleges that the defendant used a deadly weapon in committing the crime, the verdict necessarily includes an affirmative finding that the defendant did, in fact, use a deadly weapon, and the judgment should therefore be reformed to say so explicitly. *French v. State*, 830 S.W.2d 607 (Tex.Crim.App.1992); *Polk v. State*, 693 S.W.2d 391, 394 (Tex.

Crim.App.1985); *Sorenson v. State*, 709 S.W.2d 321 (Tex.App.—Texarkana 1986, no pet.); These cases are not in point because they do not involve the law of parties.

Because the jury did not affirmatively find that Adams used or exhibited a deadly weapon during the commission of the crime, we find that the trial court erred in adding to the judgment an affirmative finding of use of a deadly weapon. We therefore sustain Adams's point of error.

We reform the judgment by deleting the court-entered finding that Adams used or exhibited a deadly weapon, and the judgment is affirmed as reformed.