Howard O'NEAL

v.

Gary L. JOHNSON, Director, TDCJ.

No. Civ. G–97–480.

United States District Court,
S.D. Texas,
Galveston Division.

June 8, 1999.

Howard O'Neal, Tennessee Colony, TX, for Howard O'Neal, petitioner pro se.

Idolina Garcia McCullough, Office of the Attorney General, Austin, TX, for Director TDCJ–ID, respondent.

## OPINION AND ORDER

KENT, District Judge.

Before the Court is the Petition for Writ of Habeas Corpus filed by Howard O'Neal, an inmate in the Texas Department of Criminal Justice—Institutional Division serving a thirty-five year sentence imposed upon him on August 22, 1988, by the 23rd Judicial District Court of Brazoria County,

Texas, following his conviction for aggravated robbery. O'Neal has exhausted his state court remedies and is properly before this Court pursuant to 28 U.S.C. §§ 2241 and 2254. Respondent, Gary L. Johnson, has moved for summary judgment and this Court, upon review of the file and the state court records, now issues this opinion and order.

O'Neal was charged with being a party to an aggravated robbery of a convenience store in West Columbia, Texas; the indictment included an allegation that O'Neal had used and exhibited a firearm during the commission of the offense. O'Neal's bail was originally set at $50,000.00 and he filed a pretrial writ of habeas corpus seeking a reduction of the bail amount. At a contested evidentiary hearing on his writ application O'Neal, *inter alia,* called Rebecca Williams as a witness. Williams testified that at the time of the robbery O'Neal was with her. Williams was subsequently subpoenaed as a witness for O'Neal's preferentially set trial, but at the time trial was to commence, O'Neal's attorney failed to appear and the jury was released and the case was continued. O'Neal's trial counsel was cited for contempt and ultimately found guilty, fined, and replaced by Von Shelton. By the time O'Neal's case was again pressed to trial, Williams had moved out of state and her whereabouts were unknown. Shelton made diligent, albeit unsuccessful efforts to locate Williams; he filed a motion for continuance due to her absence, which was denied; he requested the issuance of a writ of attachment for Williams, which was ordered by the court; and he was granted the appointment of an investigator who, despite diligent effort, was unable to locate Williams before trial commenced. As a result of Williams' unavailability, Shelton also filed a pretrial motion to use her prior testimony at his trial in support of his alibi defense; however, that motion was denied by the presiding judge.

When O'Neal's case was put to trial, O'Neal pleaded not guilty and was tried before a jury. At trial, O'Neal raised an alibi defense. He challenged the positive identification of him by the victim, Sue Kesslar, as one of the two perpetrators and presented testimony of a passerby who identified, by name, two other men, one of whom closely resembled O'Neal, he saw fleeing from the direction of the store near the time of the robbery on the evening in question. O'Neal also called Williams' grandmother who testified that O'Neal would often call upon her granddaughter around the time of the robbery. After hearing the evidence, the court's instructions and the closing arguments of counsel, the jury returned its verdict finding O'Neal "guilty of the offense of Aggravated Robbery as charged in the indictment."

O'Neal elected to have the court assess his punishment and after a short evidentiary hearing, he was sentenced to serve thirty-five years in prison; the court also included an affirmative finding that O'Neal had used and exhibited a deadly weapon, a firearm, during the robbery. Subsequently, at a hearing on a motion for new trial, O'Neal's unsolicited complaint of being denied a fair trial by the district judge resulted in an instantaneous finding of contempt and a six month jail sentence to be served consecutive to O'Neal's prison sentence. It appears the contempt sentence was later set aside.

▮ In the instant petition, O'Neal first complains of the court's affirmative finding that a deadly weapon was used during the commission of the offense; this claim is without merit. The indictment alleged the use of a firearm, which is a deadly weapon per se, Ex Parte *Carrasco,* 750 S.W.2d 222, 225 (Tex.Crim.App.1988), thereby putting O'Neal on notice that the state might seek such a finding at trial. *Id.* at 225. The jury found O'Neal guilty "as charged in the indictment," and that verdict constitutes a *de facto* finding that O'Neal used or exhibited a firearm during the robbery. *Polk v. State,* 693 S.W.2d 391, 394 (Tex.Cr.App.1985) O'Neal cites

*Adams v. State,* 843 S.W.2d 168 (Tx.App. 1992) and argues that because he was, at worst, only a party to the robbery the jury's general verdict is insufficient to support an affirmative finding; unfortunately, when O'Neal opted to have the court assess his punishment, the court, not the jury, became the finder of fact on all punishment issues and the court was, therefore, free to include the affirmative finding since it had heard evidence during trial concerning the weapon. *Fann v. State,* 702 S.W.2d 602, 604–5 (Tex.Cr.App.1985) This claim has no merit and it must be dismissed.

On the other hand, O'Neal's remaining complaint raises a very serious constitutional concern: whether his Sixth Amendment right to compel the attendance of material witnesses at his criminal trial, a right which applies equally to the state courts, was violated. *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) O'Neal complains that the trial judge trampled on this right when he refused to allow him to present the prior testimony of Rebecca Williams, his chief alibi witness, after he had sufficiently demonstrated her unavailability. This Court agrees.

 The right to present favorable witnesses at one's criminal trial is fundamental, however, it is not absolute. It must be weighed against countervailing public interests. *Taylor,* 484 U.S. at 414, 108 S.Ct. 646 The factors to consider in the balance include the integrity of the adversary process, which directly depends on the presentation of reliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the truth-determining function of the trial process. The trial court can properly exclude alibi testimony only if these factors outweigh the defendant's interest in presenting that testimony. *United States v. Levy–Cordero,* 67 F.3d 1002, 1013 (1st Cir.1995) The application of these factors by the trial court is a question of law which may be reviewed in habeas,

*Bowling v. Vose,* 3 F.3d 559, 561 n. 4 (1st Cir.1993), and it is obvious that the concerns related to the integrity of the trial process do not weigh in favor of the exclusion of Williams' testimony in this case.

 The testimony of Williams was clearly relevant, indeed crucial, to O'Neal's alibi defense, the only real question is whether it was admissible. Rule 804(b)(1) of the Texas Rules of Criminal Evidence, just like its federal counterpart, provides that testimony given at a prior hearing is admissible if the declarant is unavailable and the party against whom the testimony is offered had an opportunity and a similar motive to develop the testimony by examination of the witness/declarant at the prior hearing. At the commencement of trial, Williams was certainly unavailable through no fault of O'Neal. She had been subpoenaed to the earlier court date; a writ of attachment was issued for her arrest, her whereabouts was unknown at the time of trial; and, despite due diligence, including the help of a court-appointed investigator, she could not be located. Cf. *Rodela v. State,* 829 S.W.2d 845, 848 (Tex.App.— Houston [1st Dist.] 1992) Furthermore, the state had cross-examined Williams at the prior hearing on the bond reduction and given the extreme exculpatory nature of her testimony, it certainly had the motive, whether acted upon or not, to fully develop her testimony. Indeed, her testimony, if true, established O'Neal's innocence and was fatal to the prosecution. Of course, the state argued before the trial court that use of Williams' prior testimony would deny it the right to cross-examine her at trial in front of the jury, but that position was unfounded. The state's strategic choice to forego more strenuous cross-examination of Williams at the prior hearing does not alter the fact that it had the opportunity and motive to do so. *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1505–6 (11th Cir.1985) The state took a calculated risk by limiting its cross-examination and it had no subsequent basis to complain about the use of Williams'

testimony in her absence. Clearly, the evidence was admissible, relevant and material; exclusion of the alibi testimony, which would have corroborated the testimony of O'Neal's other witnesses, *Bowling*, 3 F.3d at 562, distorted the truth-seeking function of the trial. Given the important nature of Williams' testimony, the concerns over fairness and efficiency are not sufficiently weighty to justify the denial of O'Neal's Sixth Amendment right. The trial judge was wrong, as a matter of law, to exclude the testimony and his error was of constitutional dimension.

Finding constitutional error does not, in and of itself, end the Court's analysis. Habeas relief cannot be granted unless the error was sufficiently prejudicial to O'Neal's rights. To meet this test, the error must have "had substantial or injurious effect or influence on determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 766, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) Even if the error in this case is not deemed per se prejudicial, which would strain credulity, a simple review of the trial record clearly shows that the judge's error was not harmless. The actual trial of this case lasted about four hours and fifteen minutes. O'Neal's defense was that of alibi. The jury deliberated for four hours before returning a verdict; however, during its deliberations, it sent out several notes which include, *inter alia*, the following messages:

There is reasonable doubt by three people. Both the state and defense presented a weak case. Vote 9 guilty 3 not guilty.

Did Baldridge look like O'Neal? Or did Baldridge look (like) the other man.

We need to know the range of punishment if found guilty.

We need Sue Kesslar's testimony.

Sue Kesslar's testimony on description of clothes of suspects in robbery. Here (sic) testimony for defense & prosecution on this description.

These notes make it obvious that the jury was troubled with the sufficiency of the evidence against O'Neal. The jury, upon its own admission, found the victim's testimony "weak." And it is beyond any reasonable doubt that the "weak" nature of O'Neal's defense was substantially due to the absence of the available corroborating testimony of Williams. In fact, her testimony was the key ingredient of O'Neal's entire defense. When the weight of her testimony is balanced against the "weak" testimony of the victim, it is clear that its absence had, at the very least, an injurious effect or influence on the jury's determination of his guilt. O'Neal is entitled to relief on this ground and it will be granted.

For the foregoing reasons, it is the **ORDER** of this Court that Respondent's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that because of the erroneous exclusion of the trial testimony of Rebecca Williams, the Writ for Habeas Corpus of Howard O'Neal will be **GRANTED** unless the State of Texas conducts a new trial within a reasonable time not to exceed 180 days.

### FINAL JUDGMENT

For the reasons set forth in the Opinion and Order of this Court of even date herewith, it is **ORDERED** that the Petition of Howard O'Neal for a Writ of Habeas Corpus will be **GRANTED** unless the State of Texas conducts a new trial within 180 days.

**THIS IS A FINAL APPEALABLE JUDGMENT.**